### PORTLAND TERMINAL CO. v. JARVIS.

(Circuit Court of Appeals, First Circuit. September 29, 1915.)

No. 1110.

1. MASTER AND SERVANT ⟨key⟩113—PERSONAL INJURY—NEGLIGENCE—RAILROADS —LOW BRIDGE.

If passage of a train, containing tall cars, beneath a bridge was not reasonably safe, under all the circumstances, for employés engaged in moving it, the railroad company might be negligent in permitting such passage, though height and construction of the bridge had been established by public authority before it became owner of the road.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 213, 224–227; Dec. Dig. ⟨key⟩113.]

2. MASTER AND SERVANT ⟨key⟩286—PERSONAL INJURY—NEGLIGENCE—QUESTION FOR JURY.

Evidence in action for injury to a railroad employé, while acting as yard conductor, in moving, under orders, on a dark, stormy night, a freight train between points in a yard, by being thrown from the tall rear car by a bridge, held to make a question for the jury whether the master was reasonably bound to anticipate his presence on top of the car at such place, and had knowledge regarding the car, material to his safety, which he could not reasonably have been supposed to possess, and which it ought to have communicated to him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⟨key⟩286.]

3. MASTER AND SERVANT ⟨key⟩288—PERSONAL INJURY—ASSUMPTION OF RISK— QUESTION FOR JURY.

Evidence, in an action for injury to a railroad employé by being thrown from the tall rear car by a bridge, while acting as yard conductor, in taking, under orders, on a dark, stormy night, a freight train between points in the yard, held to make a question for the jury whether the danger was a risk incident to his employment, obvious to him if he had exercised ordinary care, and therefore assumed by him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. ⟨key⟩288.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. MASTER AND SERVANT ⟨key⟩204—PERSONAL INJURY—ASSUMPTION OF RISK— EMPLOYERS' LIABILITY ACT.

Under Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1913, §§ 8657–8665), a railroad employé does not assume risk of injury from negligence of a fellow servant in not excluding a tall car from the train, or in not cautioning him regarding its height.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544– 546; Dec. Dig. ⟨key⟩204.]

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MASTER AND SERVANT ⊚⇒228—PERSONAL INJURY—CONTRIBUTORY NEGLI-
GENCE—EMPLOYERS' LIABILITY ACT.

> Under the federal Employers' Liability Act, contributory negligence of an injured railroad employé will not bar recovery by him, but, at most, is matter for consideration by the jury in assessing his damages.

> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. ⊚⇒228.]

In Error to the District Court of the United States for the District of Maine; Clarence Hale, Judge.

Action by Frank R. Jarvis against the Portland Terminal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Joseph Symonds, of Portland, Me. (Symonds, Snow, Cook & Hutchinson, of Portland, Me., on the brief), for plaintiff in error.

Robert Whitehouse, of Portland, Me. (Irving E. Vernon and Woodman & Whitehouse, all of Portland, Me., on the brief), for defendant in error

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge  Jarvis, the defendant in error, recovered judgment in the District Court against the Portland Terminal Company, plaintiff in error (hereinafter called defendant), for personal injuries sustained on April 13, 1913, while in the defendant's employ. The defendant was and is a common carrier by railroad, engaged in interstate commerce, and Jarvis' suit was brought under the federal Employers' Liability Act (35 Stat. 65).

The only error assigned is the refusal of the District Court, at the trial, to direct a verdict for the defendant upon all the evidence.

Jarvis, when hurt, was acting as "yard conductor," and was engaged, by order of the defendant's yardmaster, in moving a train of freight cars from one point to another in the defendant's yard. It was between 8 and 9 o'clock of a dark, foggy, and rainy evening. The defendant's tracks on which the train was moving passed under a bridge called the Danforth Street bridge. Jarvis was sitting on the top of the last car in the train. He struck the bridge when the car passed beneath it, and was thrown from the car to the ground.

Before it reached the bridge, the car had passed under the usual "tell tales" guarding it, and, when he felt these strike him, Jarvis had thrown himself flat on his back across the top of the car; but the top of the car was not far enough below the bridge to let him go under without striking it, even in that position.

[1] In construction, location, and height above the track, the bridge stood at the time precisely as it stood at the time of an order duly passed in 1909 by the State Railroad Commission, approving its construction and location, and imposing the obligation of maintaining it as then located and constructed upon the defendant's predecessor. But we are unable to hold, as the defendant contends, that because the height and condition of the bridge had been thus established, independently of it, by public authority in 1909, no fault can thereafter be attributed to it for want of sufficient height above the tracks, or for any-

thing else appertaining to said bridge. If passage beneath the bridge was not reasonably safe, under all the circumstances, for employés engaged in moving such a train or such a car as here in question, the defendant might still be negligent in permitting such passage. Boston & Maine R. R. v. Brown (decided by this court December 17, 1914) 218 Fed. 625, 627, 134 C. C. A. 383.

On the uncontradicted evidence, the danger to employés on a car such as that from which Jarvis was thrown, in passing under the bridge in question, was much greater than would have been the case with freight cars of the average dimensions. Its running board was 14 feet 9½ inches above the track. The exact height of the bridge above the track did not appear. There was testimony from the defendant's yardmaster that a car 15 feet 8 inches high could go underneath it; but, if so, the margin of clearance in such a case must have been extremely narrow, in view of the uncontradicted testimony that the bridge threw Jarvis, lying on his back, from the top of a car only 10½ inches lower. No safe passage under the bridge, on the top of that car, could have been possible in any posture. It was undisputed that the car was about 2 feet higher than the average freight car, and about 2½ feet higher than the car next ahead of it in the train. On a car 2 feet, or even 2½ feet, lower, no one could pass under the bridge in a standing posture, or even sitting upright; and it appeared that the usual posture adopted to get under the bridge had been sitting, stooping down, and bending the head.

[2] Safe passage under the bridge on top of the car in question being thus impossible, the question is whether or not the evidence was sufficient for a finding that the defendant was negligent, as the declaration alleged, in failing to warn Jarvis of the danger when it ordered him to take the train through the bridge. It gave him no such warning, and whether it was bound to do so or not depends upon the question whether or not it was reasonably bound to anticipate his presence on the top of the car at the time the dangerous bridge was reached.

The orders given him did not necessarily require him to be there; and, as has been said, there were lower cars in the train upon which he would not have incurred the same danger. The defendant contends that the dangers of being on top of the car when it went under the bridge were as plainly obvious to him as to any one else, that it had no reason to suppose him likely to be there unless warned, and therefore no duty to warn him against being there.

It was undisputed that Jarvis had been employed in the defendant's yard, either as brakeman or conductor on freight trains, for more than a year, during which period he had passed on such trains under the same bridge by night as well as by day, quite frequently as brakeman, and sometimes, but not so often, as conductor. He was also aware that freight cars received at the yard varied in height; and this car had been standing in the yard, where he could have seen it, since March 29. He had also, after receiving orders to move the train as above on the evening of his accident, passed along it with a lantern, observing the cars included in it, the tags on them, and their couplings, before he climbed to the top of this car at its rear end and signaled to start the

train. With the aid of his lantern he might, of course, have seen the difference in height between this car and the one it followed, notwithstanding the darkness, had he directed his attention to the matter. But it also appeared that the defendant had inspectors, required by rule to be familiar with the clearances of all bridges, and not to let cars go forward so loaded as to be damaged by striking them. The inspectors were under orders to pass only cars not exceeding 15 feet in height, and to report all exceeding that limit as too high, in order that they might be set aside and not permitted to attempt passage under the bridges. It had been the practice to inspect all cars for the above purpose immediately on their arrival at the yard. Although two weeks had passed since the arrival of this car in the yard, and although it had a brake staff rising to 15 feet 1 inch above the track, so that it ought, according to the above orders, to have been reported as too high and set aside, this had never been done. That the height of the cars was examined by the car inspectors before trains were made up, Jarvis testified that he knew, but it did not appear that he knew the limit of height which had been fixed for cars which would be included in the train.

Besides the men on the engine, Jarvis and two brakemen were the only employés engaged in running this train. The jury might have concluded that they were obliged to be on the top of some car in the train, it not appearing that there were any positions not on the tops of cars which they could have occupied. One brakeman Jarvis had stationed forward near the engineer, the other was with him on the rear end of the last car. They were there, as he testified, to perform the duty of looking out for the rear end of the train. There was nothing to show, and the jury was not obliged to find, that this duty could have been as well performed from a position on the roof of some car in the train other than the rear car. Except that there were cars safer in being not so high, the evidence showed, at any rate, no reason why he should have selected any other car.

It did not appear that Jarvis had anything to do with making up the train, or knew what cars were to be or had been included in it, or had seen the train after it was made up before he went to it with his lantern to take charge of it in pursuance of the orders given him as above. If the task then imposed upon him had been otherwise the same, but to be performed in broad daylight, with full opportunity to observe for himself the height of the rear car before he mounted it, and to compare its height with that of the other cars and with the height of the bridge during the approach of the train to the bridge, it might have been said that there was nothing calling upon the defendant to foresee, in view of Jarvis' previous experience and knowledge, that he might place himself on the dangerous rear car or stay there until it went under the bridge, and therefore no ground for finding that it was negligent in failing to warn him against doing so. But, from the circumstances disclosed by the evidence, we cannot hold this to have been the only conclusion reasonably permissible. The rear car being one which the defendant ought, according to its own rules, to have kept out of the train as too high, and being too high in any case to let any one go through the bridge safely on its top, and being also, as the jury might have found,

the one upon which Jarvis would be likely to take his place unless prevented by knowledge that it was too high, we cannot hold that the court below erred in leaving it to the jury to say whether or not the defendant acted with due regard for Jarvis' safety in leaving him to find out for himself that the car was too high, from such examination as he could have been expected to make, with the aid of his lantern, of cars with the selection of which he had had nothing to do, on a dark, foggy, and rainy evening, after receiving his orders to move the train and before proceeding to obey them. Whether or not there was knowledge regarding the car in question, material to his safety, in the defendant's possession at the time, which he could not reasonably have been supposed to possess, notwithstanding the time during which the car had been standing where he might have seen it, and which knowledge, under the circumstances, ought to have been communicated to him, was, in our opinion, a proper question for the jury.

[3, 4] The same considerations prevent us from holding that it was error to refuse the ruling requested that on the evidence the danger from the bridge was a risk incident to Jarvis' employment, obvious to him if he had exercised ordinary care, and therefore assumed by him. If the failure to exclude the car in question from the train, or the omission to caution him regarding its height, were due to negligence on the part of his fellow employés, the defendant cannot say, under the act, that the risk of injury from these causes was assumed.

[5] Nothing in the evidence tending to show contributory negligence on Jarvis' part could have aided the defendant's motion for a directed verdict in its favor, because, under the act, such negligence would not have barred him from recovery, but would have been, at most, matter for the jury to consider in assessing his damages. We are unable to hold that the court erred in submitting the case to the jury instead of granting the defendant's motion, and no other error is assigned.

The judgment of the District Court is affirmed, with interest, and the defendant in error recovers his costs on appeal.

PUTNAM, Circuit Judge. On the hearing of this case I was reminded that I advised the Boston & Maine Railroad, of which the Portland Terminal Company is the successor, in reference to the street crossings on the Fore River front of that railroad, of which that in question here was one, and therefore I concluded that I was precluded from taking any part in the judgment in this case.

⟪⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes