# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### PHILADELPHIA & R. RY. CO. v. MARLAND.

(Circuit Court of Appeals, Third Circuit. January 22, 1917.)

#### No. 2112.

1. MASTER AND SERVANT ⬅276(7)—INJURIES TO SERVANT—EVIDENCE—CAUSE OF INJURY.

Evidence that a brakeman on a train which passed under three bridges having insufficient clearance was found on the tender lying with his feet toward the engine and his head toward the train, having a gash on his forehead and a broken neck, is sufficient to warrant the jury in inferring, not merely speculating, that the brakeman was killed by one of those bridges striking his head while he was standing on the tender as the. train passed under it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959; Dec. Dig. ⬅276(7).]

2. MASTER AND SERVANT ⬅276(7)—INJURIES TO SERVANT—EVIDENCE—CAUSE OF INJURY.

Evidence that the brakeman was seen on one of the cars when so close to the first of those three bridges that he would not have had time to get onto the tender before the train passed under it, and that another of the bridges had sufficient clearance for one standing on the tender, though not for one standing on a box car, was sufficient to warrant the jury in inferring, not speculating, that it was the third of those bridges which struck him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959; Dec. Dig. ⬅276(7).]

3. MASTER AND SERVANT ⬅278(20)—INJURIES TO SERVANT—EVIDENCE—NEGLIGENCE.

In an action for the death of a railroad brakeman, who was struck by a bridge while he was riding on the train, where plaintiff abandoned the charge of negligence in the construction of the bridge, and relied only on negligent failure to warn the brakeman from the danger arising in the construction, concerning which there was affirmative evidence introduced, defendant's contention that the jury were permitted to presume negligence from the fact of the accident cannot be sustained.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 972; Dec. Dig. ⬅278(20).]

4. MASTER AND SERVANT ⬅226(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK—NEGLIGENCE OF MASTER.

A railroad employé has a right to presume that the company will perform its duty to provide a reasonably safe place and safe appliances for

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

239 F.—1

use of its employés, and does not assume the risk of the company's negligence in performing that duty, though he does assume the ordinary risks incident to his work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659, 660; Dec. Dig. ☞226(1).]

5. MASTER AND SERVANT ☞217(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK—RAILROAD BRAKEMAN—HIDDEN DANGERS.

A brakeman assumes risks which are obvious, or of which he knew or might have learned by the ordinary use of his senses, but not the risk of hidden or latent dangers, of which he was ignorant, and concerning which the railroad company owes him the duty to warn.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 574; Dec. Dig. ☞217(1).]

6. MASTER AND SERVANT ☞288(12)—INJURIES TO SERVANT—QUESTION FOR JURY—ASSUMPTION OF RISK.

In an action for the death of a brakeman, who was struck by a bridge over the track, the outer portions of which had a sufficient clearance, but the central portion did not, where it appeared that the whole structure was so blackened by smoke and was so shaded that it was difficult for one approaching the bridge on a train to see the lower central portion, the question whether the risk was so obvious that the brakeman assumed it is one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1083; Dec. Dig. ☞288(12).]

7. MASTER AND SERVANT ☞288(5)—INJURIES TO SERVANT—QUESTION FOR JURY—ASSUMPTION OF RISK—WARNING OF DANGER.

In such an action, evidence as to the warning given the brakeman as to the particular danger of that bridge *held* not to show as a matter of law that he knew of that danger and therefore assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1077; Dec. Dig. ☞288(5).]

8. DEATH ☞11—MEASURE OF DAMAGES—STATUTE.

Since there was no recovery at common law for injuries resulting from death, not only the right to recover for such injuries, but also the measure of recovery when it exists, must be found in some statute.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 10, 15; Dec. Dig. ☞11.]

9. DEATH ☞84—DAMAGES—EMPLOYERS' LIABILITY ACT—FUNERAL EXPENSES.

Under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657-8665]), which authorizes recovery only of the pecuniary loss resulting from death to the beneficiaries, the widow and children of a deceased brakeman cannot recover the funeral expenses, since those are charges not against the beneficiaries, but against the estate, which has a right of action to recover such loss.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 110; Dec. Dig. ☞84.]

10. COURTS ☞352—FEDERAL COURTS—RULES OF DECISION—STATE STATUTES.

Comp. St. Ann. 1916, § 1537, commonly called the Conformity Act, which provides that the practice and modes of proceeding in civil causes in the District Court shall conform as nearly as may be to the practice and modes of proceeding in like causes in courts of record in the state, any rule to the contrary notwithstanding, does not relate to the personal conduct and administration of the judge in the discharge of his separate functions, or to the right of the federal courts to determine what matters they will review, and the mode in which such matters shall be prepared and submitted and therefore does not make Act Pa. May 11, 1911 (P. L. 279) authorizing exceptions without allowance by the trial judge to any

part or all of the charge applicable in federal courts notwithstanding rule 10, § 2 of the District Court for the Eastern District of Pennsylvania, providing that no bill of exceptions will be allowed which contains the charge of the court at large, upon any general exception to the whole of such charge, and rule 10, § 1, of the Circuit Court of Appeals, Third Circuit (224 Fed. vii, 137 C. C. A. vii), providing that the judges of the District Court shall not allow any general exception to the whole of the charge to the jury, but requiring the party excepting to state distinctly and separately the several matters to which he excepts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932; Dec. Dig. ☞352.]

11. COURTS ☞356—FEDERAL COURTS—REVIEW—PLAIN ERRORS.

Error in an instruction in a charge in an action under the Employers' Liability Act, authorizing recovery by a widow for loss of her husband's companionship, is a plain error which the court will notice under rule 11 of the Circuit Court of Appeals, Third Circuit (224 Fed. vii, 137 C. C. A. vii), authorizing the court at its option to notice plain errors not assigned, though such error was not specifically excepted to.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. ☞356.]

12. COURTS ☞356—FEDERAL COURTS—REVIEW—ERRORS NOT ASSIGNED—FAILURE TO EXCEPT.

Though such error was assigned, it stands as though unassigned within the rule, since it was not properly assigned because of the lack of a specific exception.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. ☞356.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by Catherine Marland, administratrix of the estate of William Edgar Marland, deceased, against the Philadelphia & Reading Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, and new venire awarded.

Wm. C. Mason, of Philadelphia, Pa., for plaintiff in error.
George Demming, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an action brought under the Employers' Liability Act of April 23, 1908, c. 149, 35 Stat. 65, against the railway company for negligently causing the death of the plaintiff's intestate, her husband. The averments in the statement of claim pertinent to the present inquiry are, that the plaintiff's intestate was a freight brakeman in the employ of the defendant railway company, engaged at the time of his injury in interstate commerce; that his death was caused by his head coming in contact with an overhead bridge; and that his death was due to the negligence of the defendant company, (1) in constructing and maintaining over its tracks a bridge with insufficient clearance; and (2) in operating a train under such bridge, without giving the intestate timely and sufficient warning of its dangers. The first ground of negligence was abandoned,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and the case was tried and decided upon the second ground, resulting in a verdict for the plaintiff. The defendant sued out this writ.

Of the several specifications of error, the defendant (plaintiff in error) relies chiefly upon the one in which error is charged to the court's refusal to give binding instructions in its favor. Under this assignment, its complaint is, that the court permitted the jury to speculate, in the absence of affirmative proof, (1) as to the cause of the intestate's death, and (2) as to the fact and character of the defendant's negligence. A consideration of this contention calls for a brief recital of the evidence.

[1] At the time of his death, Marland was the front brakeman of a freight train on a run on the defendant's railroad from Nicetown to Belmont. Over the tracks of this run were seven overhead bridges constructed at different elevations. Four of these bridges were so high that they were in no sense dangerous, and may, therefore, be eliminated from the case. Three were known as the Wissahickon Avenue bridge, Stokely Street bridge, Fox Street bridge, and were approached in the order named. The Wissahickon Avenue bridge had a clearance of fifteen feet ten inches, that is, the distance between the top of the rails and the under surface of the bridge was fifteen feet ten inches. Stokely Street bridge had a like clearance of fifteen feet ten inches between the rails and the lowest part of its under surface; and Fox Street bridge had a clearance of nineteen feet seven inches. It was testified that the clearances of these three bridges were such that a man could not stand upon a box car of ordinary height and escape being struck on the head by the bridges, and that the clearances of two of the bridges were such as not to permit a man to sit erect upon such a box car in passing under them without like contact.

Marland was found, on the arrival of the train at Belmont, after passing under the three bridges, lying upon the top of the tender, with a gash in his forehead and his neck broken, dead or dying. There was no witness to his injury, and the court permitted the jury to infer the cause of death from his position upon the tender of a given height, considered in connection with his own height, in relation to the clearances of the bridges under which he had passed, as well as from the nature of his injuries. The defendant says that in submitting this testimony to the jury and allowing them to infer from it the cause of the intestate's death, the court relieved the plaintiff of her duty to affirmatively show the cause of death, and permitted the jury to speculate thereon, arguing that the intestate might have come to his death by other means, as by something falling or thrown from a bridge, and striking him. True, as to the cause of death there was no direct evidence. But clearly, proof of cause of death is not restricted to direct evidence. 2 Thompson on Negligence, § 2194. It may be proved by legitimate inferences drawn from attendant facts, such as the nature of the wound, the position of the body, the clearances of the bridges, and the absence of any other suggested or reasonable cause. These facts constitute evidence from which the reasonable and almost unavoidable inference is that death was caused by contact with an overhead bridge. From these facts we think the

jury might find the cause of death as a fact. Such findings, upon like inferences drawn from similar situations, have been sustained by the courts. In C. & O. Ry. Co. v. Cowley, 166 Fed. 283, 92 C. C. A. 201, and in Choctaw, etc., R. Co. v. McDade, 112 Fed. 888, 50 C. C. A. 591, affirmed by the Supreme Court in 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, it appears that a railroad company permitted the spout of a water tank to hang so low over passing trains as not to clear a person standing upon a car. Evidence that a brakeman, after being on a car passing the tank, was found lying on the track injured, was held sufficient (in the absence of direct testimony) to justify a finding that he was struck and injured by the overhanging spout. This was an entirely natural and reasonable inference. So a reading of the testimony in the case at bar makes it difficult to conceive how the jury could have arrived at any other conclusion than that Marland was struck and killed by one of the bridges.

The next contention of the defendant is that the plaintiff failed to show by which one of the three bridges the intestate's injuries were inflicted, and that the court permitted the jury (1) to speculate as to which one caused his death, and (2) to presume the defendant's negligence from the fact of the accident.

[2] It is manifest, that had there been but one overhead bridge so constructed as to cause the injury, the issue as to what caused death would have been submissible to the jury. Cases supra. The fact that there were three bridges so constructed does not alter the submissible character of the issue, although it may widen its range. A careful reading of the testimony discloses that the theory upon which the case was tried and upon which it was submitted does not leave open to speculation which of the three bridges caused the injury. As no one saw the injury inflicted and as the jury might properly have found that it was inflicted by one of the bridges, the plaintiff endeavored to prove and the jury evidently found, by process of elimination, which bridge did the injury.

The evidence tends to show that a man of the height of the decedent, five feet four inches, standing erect on the top of a box car of ordinary height, would be struck by *any one* of the three bridges. We think the evidence shows conclusively that at the time Marland was struck he was not upon a box car at all. When found, he was upon the tender, lying with his feet toward the engine and his head toward the train, being in a place and in a position quite impossible (in view of the direction in which the train was moving) had he received the blow when upon any box car of the train. So, it is a fair, in fact almost an inescapable inference, for the jury to draw, *that he was upon the tender when struck.*

The testimony shows, that standing upon the tender, which was about twelve feet high, his own height being five feet four inches, he would have been struck by either one of *two* bridges, that is, by Wissahickon Avenue bridge and by Stokely Street bridge, both of which had clearances of but fifteen feet ten inches; and it also shows that if standing upon the tender when passing under Fox Street bridge with its clearance of nineteen feet seven inches, he would have

cleared it. Therefore, Fox Street bridge is eliminated and the question is reduced to *which of the two bridges,* Wissahickon Avenue or Stokely Street bridge, of the same clearance, inflicted the injury.

Wissahickon Avenue bridge was the first bridge approached, and in approaching it, Marland was last seen on the fourth car from the engine, at a point about eight car-lengths distant from the bridge. The train was moving toward the bridge, and Marland was walking toward the front of the train. It was testified that the space between the first box car and the tender was too great to jump, and that one walking from the train to the tender had to descend the box car, step across to the sill of the tender, and climb up the tender to its top. It appears to be a very reasonable and in truth a very probable inference, that within the time the train moved Marland eight car-lengths to Wissahickon Avenue Bridge, it was impossible for him to make the journey of four cars, descend the last car and ascend the tender in time to be struck by Wissahickon Avenue bridge. The elimination of Fox Street bridge because of its sufficient clearance, and of Wissahickon Avenue bridge because of the location in which the testimony put Marland when the train passed under it, leaves Stokely Street bridge as the bridge which in all reasonable probability inflicted the injury. We are therefore of opinion that the jury did not speculate but drew a reasonable and sustainable inference that Marland met his death at Stokely Street bridge, and that the plaintiff did all that was required of her in telling the defendant and proving to the jury how and where Marland met his death.

[3] Further complaining of speculation by the jury, the defendant maintains that they were allowed to presume the negligence of the defendant from the fact of the accident, in violation of the well settled rule, that the fact of the accident carries with it no presumption of negligence on the part of the employer, and that the employer's negligence is an affirmative fact to be established by the injured employee. Patton v. R. R. Co., 179 U. S. 663, 21 Sup. Ct. 275, 45 L. Ed. 361; Texas and Pacific R. R. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136. The serious fault in this contention is in placing the negligence upon which the plaintiff relies at the bridge, and in supposing that the particular negligence charged to the defendant is at all deducible from the fact of the accident. She relies upon the accident as proof of the cause of death, but for proof of the cause of the accident, which is the negligence charged, she goes entirely away from the accident and produces other testimony. If she had held to her original charge that the negligence of the defendant in maintaining a bridge with insufficient clearance caused the accident, there might be substance in the suggestion that she relied upon the fact of the accident to prove that negligence, for she offered no other evidence of such negligence; but she abandoned that ground of negligence and relied upon another, which was the defendant's failure to give her intestate explicit and sufficient warning of the peculiar dangers of the bridge *before he reached it.* Negligence arising from insufficient warning is by no possibility deducible from the fact or from the character of the accident. Such negligence, if it exists, is

to be found before the time and away from the place of the accident; the accident is its result, subsequently occurring. Upon this ground of negligence the plaintiff produced affirmative evidence, with which the defendant joined issue by vigorously controverting it. We are therefore of opinion that the court did not permit the jury to presume negligence from the accident.

As there was no issue of the defendant's liability for constructing or maintaining overhead bridges with their limited clearance, the next question is whether the risks incident to passing under such bridges were assumed by the intestate as risks incident to his employment.

[4, 5] It is one of the primary duties of a railroad company to use due care in providing a reasonably safe place and safe appliances for the use of its employees. An employee has a right to assume that the railroad company will perform this duty, and he does not assume the risks arising from his employer's negligence in performing it, Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188; Choctaw, etc., R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; until, at least, he becomes aware of them, or they are so plainly observable that he must be presumed to have known them, Cincinnati, etc., Co. v. Thompson, 236 Fed. 1, 7; —— C. C. A. ——; C. & O. Ry. Co. v. Proffit, 241 U. S. 462, 36 Sup. Ct. 620, 60 L. Ed. 1102. What the employee assumes upon entering the employ of a railroad company are the ordinary risks incident to his work, as distinguished from the risks incident to the failure of the railroad company to do its duty to him. Therefore, in this case, Marland did not assume the risk that the railroad company would not properly and sufficiently warn him, but he assumed those risks which were patent and obvious and incidentally occurring in the course of his employment as brakeman. Speaking generally with respect to the question of the assumption of risk, as raised by the facts of this case, Marland assumed those risks on his run which were obvious or of which he knew or might have learned by the ordinary use of his senses. But with respect to hidden or latent dangers, of which Marland was ignorant or with knowledge of which he was not charged, the railroad company, in the performance of its primary duty of furnishing its servants a reasonably safe place in which to work, owed Marland the duty to give him warning of such hidden or latent dangers and to make the warning commensurate with their risk, and when the dangers were peculiar, to make the warning explicit, so that he might know when and how to protect himself from them.

[6] With this elementary statement of the law we approach the question whether the issue of the assumption of risk should have been decided by the court as a matter of law or submitted to the jury as an issue of fact. The determination of this question depends upon the character of the testimony upon which the court was required to act. If the facts were such that all reasonable men must draw from them the one conclusion that the intestate assumed the risks, then unquestionably it was the duty of the court to withdraw the case from the jury and peremptorily instruct them to render a verdict for the defendant. Pittsburgh S. & M. R. R. Co. v. Lamphere (C. C. A. 3d)

137. Fed. 20, 25, 69 C. C. A. 542. But if there was a conflict in the testimony such as to warrant reasonable men to draw different conclusions, the question of assumption of risk, like the question of contributory negligence, was primarily one for the jury. Pittsburgh S. & M. R. Co. v. Lamphere, 137 Fed. 20, 25, 69 C. C. A. 542; Terminal Co. v. Jarvis, 227 Fed. 8, 141 C. C. A. 562; Choctaw, etc., Co. v. McDade, 112 Fed. 886, 50 C. C. A. 591, affirmed 191 U. S. 64, 66, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Cincinnati, etc. Co. v. Thompson, 236 Fed. 1, —— C. C. A. ——; Seaboard Air Line Ry. Co. v. Padgett, 236 U. S. 668, 673, 35 Sup. Ct. 481, 59 L. Ed. 777; B. & O. Ry. Co. v. Whitacre, 242 U. S. 169, 37 Sup. Ct. 33, 61 L. Ed. ——. In determining whether the question of assumption of risk is for the court or the jury, the court is controlled not by the weight of evidence to the effect that the risks were assumed, but by the fact that there is substantial evidence to the effect that they were not assumed. Cincinnati, etc., Co. v. Thompson, 236 Fed. 1, 6, —— C. C. A. ——. Our inquiry, therefore, is directed to the question, first, whether there is a conflict of testimony upon the question of the assumption of risk, and second, whether the testimony to the effect that the plaintiff's intestate did not assume the risks, is substantial.

[7] The testimony shows that the under surface of both the Wissahickon Avenue and Fox Street bridges was smooth and regular, that is, there were no hidden or latent dangers under those bridges, and that their dangers were such as could be seen and anticipated from observation of the bridge elevation by one approaching them. In the Stokely Street bridge, however, the situation was entirely different. This bridge, as it spanned the tracks, was practically in three parts, or, as a witness said, it "is really three bridges," linked together, having three clearances. The side elevation of the bridge, that is, the side visible to one approaching it by train, was 19 feet 10 inches, a clearance carrying dangers, inconsiderable, if any. Toward the center of the bridge, at a distance of about 12 feet from its side and running its entire length, the under part abruptly dipped down two feet or more, reducing the clearance to 15 feet 10 inches. This central hanging structure extended to within 12 feet of the other side, where it as abruptly ascended an equal distance and made the clearance for the third part of the bridge the same as that of the first. The entire under part of the bridge was blackened by smoke and gases from engines. In approaching the structure from a distance, the under portion of the bridge appeared to be one dark plane, as the central hanging part was in shadow. When within "about 30 feet or perhaps two car-lengths of the structure," by careful looking, this part was discernible. As this central depending structure, dark in itself, was in the shadow of its lateral elevations, there was a question, vigorously controverted, whether its dangers, manifestly considerable, were obvious, and therefore whether they were risks assumed by the intestate as incidents to his employment. We think this was a submissible issue, as evidently, did the parties, for the plaintiff, considering it to be a risk not assumed, based her case of negligence upon proofs of an insufficient warning of its dangers; and

the defendant based its case upon proofs that the warning was sufficient, and even if it were not, then the dangers were known to the decedent, and *for that reason* their risks were assumed by him. Here was a complete conflict of testimony. The plaintiff's case as to the intestate's lack of knowledge and the defendant's lack of warning was to the effect that the run was new to him and that he told the conductor that "he had been as far as Nicetown before, but he had not been beyond Nicetown on this job," and "that he had never worked on this job before," and that the conductor "gave him instructions in regard to bridges beyond Nicetown," and "told him to be careful to look out for the overhead bridges  *  *  *  because some of them would not clear him, they would not *clear a man standing up* on the *cars*  *  *  *  (and further the conductor) mentioned the Stokely Street bridge in particular to him." The jury may have found nothing in this warning that informed Marland that the Stokely Street bridge would not clear him *sitting* on a car or *standing on a tender* or acquainted him with the peculiar danger of the abrupt drop in the center and within the shadow of that bridge. The defendant's position upon the subject of intestate's knowledge and of its own warning is that the warning given was ample, but that it was not bound to warn the intestate at all because he already knew the dangers, having previously and repeatedly made the run. This is a perfectly legitimate defense, raising the question of assumption of risk in another aspect, but leaving it, nevertheless, still a question for the jury. The defendant produced testimony to the effect that Marland had made this run four times during the two previous days and had made a part of the run going under some of the same bridges a number of times during previous years. Thus upon the questions of sufficiency of warning and the decedent's knowledge of the dangers acquired before and after warning, there was a conflict of testimony out of which the jury could render a verdict either for the plaintiff or defendant.

The defendant also relied upon the warning given by tell-tales, which, as shown by the testimony, were in good working condition, and the court permitted the jury to decide whether the tell-tale in front of the Stokely Street bridge alone constituted a warning sufficient to apprise the decedent of the peculiar dangers of that bridge lurking in its shadow.

Thus the case went to the jury, and error is charged to the court for not deciding as a matter of law "that the warnings were sufficient and adequate, and therefore, he (Marland) must be presumed to have assumed the risk incident to his employment," and that the plaintiff was without right to recover.

The matters which control a trial court in determining when the question of assumption of risk is to be submitted to or withdrawn from a jury were tersely stated (in principle) by the Circuit Court of Appeals for the Second Circuit in New York, N. H. & H. R. Co. v. Vizvari, 210 Fed. 118, 127, 126 C. C. A. 632, and elaborately discussed by the Circuit Court of Appeals for the Sixth Circuit in Cincinnati, N. O. & T. P. Ry. Co. v. Thompson, 236 Fed. 1, —— C. C. A. ——, and followed by the Circuit Court of Appeals for the First

Circuit in Terminal Co. v. Jarvis, 227 Fed. 8, 141 C. C. A. 562, a case of singular resemblance in issue and fact to the case at bar. In applying these well settled principles to this case, it is sufficient to say, without further citing the law or reviewing the testimony, that we find a conflict of evidence upon the question of assumption of risk in any aspect in which that question is raised, and while we do not assume to weigh the evidence and determine for which party it preponderates, we nevertheless find substantial evidence upon which, if believed, the jury might determine that the risks were not assumed, and that, therefore, the court committed no error in refusing to withdraw the case from the jury.

The remaining assignments of error relate to the measure of damages. They may be divided into two classes, one charging error to the court in admitting testimony of funeral expenses and instructing the jury to award damages therefor; and the other assigning error in that part of the charge in which the jury were directed to include in the damages the loss to the plaintiff of her husband's companionship. To the first point, exception was properly taken when the testimony was offered. With respect to the second, an exception was noted generally to the measure of damages, without pointing out to which of several elements of damage embraced in the charge the exception related.

[8] The defendant urges that there is nothing in the Federal Employers' Liability Act that authorizes an award of damages for funeral expenses. The plaintiff concedes that the act is silent upon the subject, but maintains that under rulings of the Supreme Court interpreting the statute as contemplating such *pecuniary loss and damages* resulting from death as are sustained by the beneficiaries, funeral expenses are included, and for authority cites a number of cases under a state statute, of which these are the leading ones: Burns v. P. R. R. Co., 219 Pa. 225, 68 Atl. 704; Irwin v. P. R. R. Co., 226 Pa. 157, 75 Atl. 19, P. R. R. Co. v. Zebe, 33 Pa. 318; Bradford v. Downs, 126 Pa. 622, 17 Atl. 884. The first two cases do not touch the subject; the last two decide that a father is entitled to damages for pecuniary loss sustained by injury to his child, which includes expenses for medical care and burial, for the reason that as the father is liable for these expenses, he sustains a pecuniary loss when compelled to meet them, and may recover them from the one by whose negligence they are occasioned. These authorities are manifestly not in point. Though cited for another purpose, they are nevertheless helpful, as they show, upon principle, that the pecuniary loss or damage contemplated by the act is at most only such as the beneficiaries can sustain. At the common law, the death of a human being, though wrongfully caused, afforded no basis for a recovery of damages, as the right of action for personal injuries died with the person injured; the right to recover, as well as the measure of recovery when it exists, must be found in a statute. Such a right of action is given by statute in nearly all the states. We are concerned in this case only with the right of action afforded by the Federal Employers' Liability Act, and then only with respect to the right of action afforded by

that act to the surviving widow and children of the deceased employee, such being the persons for whose benefit the present action was instituted.

[9] In cases brought under the Employers' Liability Act, the only right of recovery is that conferred by the statute, and the damages recoverable are only such as are named by its terms. The Supreme Court has repeatedly held that in actions under this act the measure of damages is the pecuniary loss resulting from death and sustained by the designated beneficiaries. This is usually limited to loss of support, though extended by the amendment of 1910 to conscious pain and suffering endured by the decedent. Garrett v. L. & N. R. Co., 235 U. S. 308, 35 Sup. Ct. 32, 59 L. Ed. 242; St. Louis etc., Co. v. Craft, 237 U. S. 648, 35 Sup. Ct. 704, 59 L. Ed. 1160; Kansas City S. R. Co. v. Leslie, 238 U. S. 599, 35 Sup. Ct. 844, 59 L. Ed. 1478. Excepting as enlarged by statute, the pecuniary loss of a widow and children resulting from death can be no more than from the nature of their relation to the deceased they can sustain.

The widow and children cannot sustain loss for funeral expenses of the husband and father because they are in no sense liable for them. Liability for funeral expenses rests upon his estate, for loss to which a right of action is otherwise afforded. As the widow and children cannot sustain such a loss, damages for such a loss cannot be included in damages awarded exclusively for their benefit. Damages recovered in an action under the act are "in trust for the designated individuals." Kansas City S. R. Co. v. Leslie, 238 U. S. 599, 604, 35 Sup. Ct. 844, 59 L. Ed. 1478. Therefore, in a suit brought for their benefit, damages may not be recovered for the benefit of the decedent's estate.

We are of opinion, that in the rulings and charge of the court including funeral expenses as an element of damage, there was error.

The remaining assignments of error as classified also relate to the measure of damages. The judge said in his charge to the jury:

"In awarding damages in cases of this sort, you are to award damages as compensation merely, that is to say, pecuniary compensation for the loss which Mrs. Marland has sustained by reason of the death of her husband. * * * *  *That includes loss of his companionship for one thing* and also the pecuniary loss from being deprived of the support of her husband."

In a later instruction, as to the method by which the jury were to arrive at the pecuniary loss, the judge said:

"You are to take into consideration in determining that, also the probabilities of her continuing to live, *and award her such an amount as*, in your judgment as men of affairs and experience, you think *would compensate her* for the loss of the support and *for the loss of companionship of her husband.*"

At the conclusion of the charge, counsel for the defendant asked and was allowed a number of exceptions, among them an exception "on the question of damages." Evidently thinking that this exception was directed to a matter of deduction of benefits paid to the widow by a railway beneficial association, of which the deceased had been a member, the judge turned to the jury and gave additional instructions upon that phase of damages.

The record thus discloses a general exception to one branch of the charge, namely, the measure of damages, a branch comprising several elements, with respect to any one of which the court might have erred. The defendant now assigns as error, under this general exception, the quoted parts of the charge in which the jury were directed to award compensation for the plaintiff's loss of the companionship of her husband.

It is generally recognized that in actions brought under state statutes for loss sustained by death, pecuniary loss only is contemplated (cases cited in Tiffany, Death by Wrongful Act, § 154; Hale on Damages, 301; Joyce on Damages, § 871; A. & E. Enc. of Law, 926–928), and it has been held, that the pecuniary loss recoverable under the Federal Employers' Liability Act by one dependent upon the employee wrongfully killed, must be a loss which can be measured by some standard, and does not include an inestimable loss such as that of society and companionship of the deceased. Michigan Central R. R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; New York, etc., R. R. Co. v. Niebel, 214 Fed. 952, 131 C. C. A. 248. The learned trial judge recognized this to be the law, for in his opinion on the defendant's motion for a new trial, he frankly conceded, that if what he had said to the jury concerning the plaintiff's right to damages for loss of companionship was not cured by his subsequent instructions, then he had committed an error, which he would have at once corrected, had it been called to his attention. If the exception to the instruction had not been general but had been specific, as required by the rule of the court in which the case was being tried, an error, inadvertently made, would thus have been saved.

But the record as made presents the question whether, under the rules and practice binding on federal courts, the defendant, on a general exception to what may be termed the whole charge, is entitled to a review by an appellate court of an error not specified at the time. This question is raised under the Act of June 1, 1872, commonly known as the Conformity Act, U. S. Comp. Stat. Ann. 1916, § 1537 (R. S. 914), which provides that:

"The practice, pleadings, and forms and *modes of proceeding* in civil causes, other than equity and admiralty causes, in the district courts, *shall conform, as near as may be,* to the practice, pleadings, * * * forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such district courts are held, *any rule * * * to the contrary notwithstanding.*"

For the governance of its own proceedings, the District Court of the United States for the Eastern District of Pennsylvania promulgated a rule, being rule 10, § 2, as follows:

"No bills of exception will be allowed which contain the charge of the court at large, *upon any general exception to the whole of such charge.* The party excepting must state distinctly and specifically the several matters of law in the charge to which he excepts."

To the same effect is a rule of this court (C. C. A. Third, Rule 10, § 1 [224 Fed. vii, 137 C. C. A. vii]) prescribing with greater particu-

larity what shall be done to make a reviewable record and of what a bill of exceptions shall consist. It is as follows:

"The judges of the District Courts shall not allow any general exception to the whole of the charge to the jury in a civil or a criminal trial at common law, nor shall a series of exceptions be allowed which produces the same result. But the party excepting shall state distinctly and separately the several matters in such charge to which he excepts, and only such matters shall be included in the bill of exceptions and allowed by the court. Exceptions to the charge or to the judge's action upon the requests for instruction shall be taken immediately on the conclusion of the charge before the jury retire, shall be specified in writing or dictated to the stenographer, and shall be specific and not general."

In harmony with these rules apparently was the practice or modes of proceeding in the state courts of Pennsylvania, until by the Act of the Commonwealth of May 11, 1911, P. L. 279, it was provided that:

"Exceptions may be taken, without allowance by the trial judge, to any part or *all of the charge*, or to the answers to points, for any reason that may be alleged regarding the same in the hearing of·the court, before the jury retires to consider its verdict, or, thereafter, by leave of the court. * * *"

In interpreting this statute, the Supreme Court of Pennsylvania has said, in effect, that a litigant is entitled, of right, to except generally to a charge, without specifying the error at the time, Foley v. P. R. T. Co., 240 Pa. 169, 87 Atl. 289, if the matter excepted to is an error committed in something said or done, as distinguished from an error of omission, which the party complaining is held to have waived, Burns v. P. R. R. Co., 239 Pa. 207, 86 Atl. 786; Merritt v. Poli, 236 Pa. 170, 174, 84 Atl. 683; Reznor Mfg. Co. v. B. & L. E. R. R. Co., 233 Pa. 369, 372, 82 Atl. 473; Fortney v. Breon, 245 Pa. 47, 91 Atl. 525; Mastel v. Walker, 246 Pa. 65, 92 Atl. 63.

The defendant urges that the act of Pennsylvania is binding on the federal courts within that State in their procedure, and, as in this instance, the rules of the District Court and of this court are "contrary" to the state statute, they must give way to the statute.

[10] We here enter a realm of legal disputes, in which federal courts have made many distinctions, not always easy to follow, between instances in which they are bound by state statutes under the Conformity Act, and instances in which they are bound only by their own rules of procedure and the laws of Congress. From the large amount of decisional law upon this statute, we readily discern two principles, which, in our opinion, are controlling upon the question before us. These principles relate to the personal conduct and administration of a judge in the discharge of his separate functions, which are uniformly held not to be "practice, pleadings and forms and modes of proceeding" within the meaning of the act, Nudd v. Burrows, 91 U. S. 426, 442, 23 L. Ed. 286; Grimes Dry Goods Co. v. Malcolm, 164 U. S. 483, 17 Sup. Ct. 158, 41 L. Ed. 524; and the right of federal courts, both trial and appellate, to determine, without regard to state statutes or practice, what matters they will review and the mode in which such matters shall be prepared, submitted and

received for review. Duncan v. Atchison, T. & S. F. R. Co., 72 Fed. 808, 19 C. C. A. 202.

Upon these phases of the federal administration of justice, speaking generally, federal courts are not inclined to be bound by state statutes. The personal conduct of the trial judge and the performance of his judicial functions are matters considered beyond the influence of state legislation and not within the purview of the Conformity Act. In this connection, it has been ruled that the Act does not require federal judges to conform to state regulations in the submission of cases and the control of the deliberations of juries, such proceedings being governed by the common law and federal statutes. Nudd v. Burrows, 91 U. S. 426, 441, 442, 23 L. Ed. 286; U. S. Comp. Stat. 1916, Ann. p. 2966, cases cited. Judges of federal courts are not controlled in charging juries by state statutes prescribing the manner of giving instructions, U. S. v. Oppenheim (D. C.) 228 Fed. 220, 228, as for instance, requiring that all instructions shall be in writing. Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387, 38 L. Ed. 224. State statutes and state constitutions forbidding judges, in instructing juries, to charge upon the facts, or to express opinions upon the facts, are not binding on federal courts, R. R. Co. v. Putnam, 118 U. S. 545, 553, 7 Sup. Ct. 1, 30 L. Ed. 257; Railway Co. v. Vickers, 122 U. S. 360, 7 Sup. Ct. 1216, 30 L. Ed. 1161; Mead v. Darling, 159 Fed. 684, 86 C. C. A. 552; nor is a state statute requiring written instructions to be taken by the jury on retiring, or permitting papers read in evidence to be taken by them, Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286, or forbidding separation of a jury, or dispensing with the requirement that exceptions to the charge be made while the jury is at the bar. Consumers' Cotton Oil Co. v. Ashburn, 81 Fed. 331, 26 C. C. A. 436; Knight v. Illinois Central R. R. Co., 180 Fed. 366, 103 C. C. A. 514; Liverpool Ins. Co. v. Friedman, 133 Fed. 713, 66 C. C. A. 543; Mead v. Darling, 159 Fed. 684, 86 C. C. A. 552; Young v. Corrigan (D. C.) 208 Fed. 431. A state statute prescribing that the judge require the jury to find specially upon particular questions of fact, R. R. Co. v. Horst, 93 U. S. 291, 299, 23 L. Ed. 898; McElwee v. Metropolitan Lumber Co., 69 Fed. 302, 319, 16 C. C. A. 232, or a statute requiring a judge to give his decision in writing upon every issue made by the pleadings, Martindale v. Waas (C. C.) 11 Fed. 551, is not binding on federal courts. As to motions for new trials, bills of exception and proceedings on review, it has been generally held that the courts of the United States are independent of state statutes and practice. Missouri Pacific Ry. Co. v. C. & A. R. R. Co., 132 U. S. 191, 10 Sup. Ct. 65, 33 L. Ed. 309; Francisco v. C. & A. R. R. Co., 149 Fed. 354, 79 C. C. A. 292, 9 Ann. Cas. 628; Chateaugay Ore and Iron Co., 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508; Knight v. Illinois Central R. R. Co., 180 Fed. 368, 372, 103 C. C. A. 514; U. S. Comp. Stat. 1916, Ann. pp. 2969, 2976, 2978, 2979, cases cited.

It would seem from the trend of these decisions, that while federal courts are required by the act to conform their modes of proceeding in civil causes, as near as may be, to modes of proceeding ex-

isting by force of statute in the state courts, they nevertheless are free from state practice and statutes in determining what matters in a trial shall be subjected to review and the manner in which such a review shall be prepared. Certainly as early as Graham v. Bayne, 18 How. 60, 15 L. Ed. 265, the Supreme Court decided that state practice does not govern the mode of bringing cases to that court for review, Mr. Justice Grier saying:

"The Circuit Courts may adopt the forms of pleading and practice of the State courts, but no state legislation can be applied to * * * the mode in which causes shall be brought into it (Supreme Court) for review."

It has been held, upon abundant authority, that the Conformity Act is not applicable to the appellate courts of the United States, the practice in which is governed by the constitutional, statutory and common law provisions applicable to writs of error in actions at law in such courts, and the rules thereof. U. S. Comp. Stat. Ann. 1916, p. 2976, cases cited. Thus in ruling on the Conformity Act, the Supreme Court, in St. Claire v. United States, 154 U. S. 134, 153, 14 S. Ct. 1002, 1010, 38 L. Ed. 936, declined to entertain a review because of the absence of an exception in a case arising in a state, where, by statute, no exception was required, saying:

"These provisions of the Penal Code of California do not control the proceedings in the Circuit Court of the United States sitting in that state. What is necessary to be done in a Circuit Court, even in civil cases, in order that its action upon any particular question or matter may be reviewed or revised in this court, depends upon the acts of Congress and the rules of practice which this court recognizes as essential in the administration of justice. Such is the result of our decisions. Rev. Stat., sec. 914 [Comp. St. Ann. 1916, § 1537]; Nudd v. Burrows, 91 U. S. 426 [23 L. Ed. 286]; Indianapolis & St. Louis R. Co. v. Horst, 93 U. S. 291 [23 L. Ed. 898]; Chateaugay Iron Co., 128 U. S. 544, 553 [9 Sup. Ct. 150, 32 L. Ed. 508]; Southern Pacific Co. v. Denton, 146 U. S. 202, 208 [13 Sup. Ct. 44, 36 L. Ed. 942]; Luxton v. Northern River Bridge Co., 147 U. S. 337, 338 [13 Sup. Ct. 356, 37 L. Ed. 194]; Lincoln v. Power, 151 U. S. 436, 442 [14 Sup. Ct. 387, 38 L. Ed. 224]; Logan v. United States, 144 U. S. 263, 302 [12 Sup. Ct. 617, 36 L. Ed. 429]."

From these decisions it clearly appears that a state statute, prescribing the matter of appeal and the mode by which an appeal may be taken to a State appellate court, cannot be binding on a federal trial court as to how it shall prepare its record for review, or on a federal appellate court as to when and with respect to what matters it shall direct or entertain a review. If this were not so, then the appellate jurisdiction, not only of the Circuit Courts of Appeals, but of the Supreme Court, would be defined and limited by the varying provisions of state statutes.

We are of opinion that the act of Pennsylvania, May 11, 1911, permitting an exception to the whole of the charge without specifying the offending portion, is not binding on the District Court or on this court and does not supersede the rules of the two courts declaring against a general exception and requiring a distinct and specific statement of the matter excepted to. As the defendant did not comply with the rules in this regard, it is without right to a review of the instruction upon the measure of damages assigned as error.

[11, 12] Although the defendant cannot ask of right for a review of a matter to which it has not made valid exception, we have before us a record in which positive error appears. Though inadvertently made, there is error nevertheless, and harmful error too, for there is no possible way of knowing how much of the verdict is for the loss of the husband's companionship, erroneously charged as an ingredient of damage. Are we to ignore this error and disregard the manifest prejudice flowing from it, in order to compel hereafter the observance of rules of procedure? Or are we required in the proper administration of justice, to so frame our decree that justice in this particular case may not miscarry? To meet such a situation and to reserve to itself full power to do justice without hindrance and in any event, this court has announced by rule that, *at its option,* it may notice a plain error not assigned (rule 11, 224 Fed. vii, 137 C. C. A. vii). While the error in this case is assigned, it stands as though not assigned, because of the lack of a valid exception, and, whether properly or improperly assigned, it is nevertheless "plain error," which, to do justice within the spirit of the rule, we feel constrained to notice. Therefore, upon the court's errors in admitting evidence of funeral expenses and in charging funeral expenses and the loss of the husband's companionship as elements of damage,

The judgment below is reversed, and a new venire awarded.

2. INDICTMENT AND INFORMATION ⊕146—DEMURRER—EFFECT AS ADMISSION.
    On demurrer to the indictment, the averments contained therein are to be taken as true.
    [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 489; Dec. Dig. ⊕146.]

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes