CENTRAL STAMPING CO. v. McKEON et al.

(Circuit Court of Appeals, Third Circuit. January 14, 1919. On Petition for Rehearing, January 31, 1919.)

No. 2419.

1. MASTER AND SERVANT ⬅️332(4)—AUTHORITY OF AGENT—JURY QUESTION.

In an action by boy hurt while alighting from one of defendant's wagons, on which he was riding at the invitation of driver, where the case was tried and submitted on theory that defendant's stableman acquiesced in the driver's unauthorized invitation, *held*, under the evidence, that the question of stableman's authority to bind defendant should have been submitted to the jury.

On Petition for Rehearing.

2. COURTS ⬅️405(17)—CIRCUIT COURT OF APPEALS—ASSIGNMENT OF ERROR— NECESSITY.

In an action by a boy, hurt while alighting from one of defendant's wagons, on which he was riding at the invitation of the driver, where it

appeared at the argument that the crux of the case was the authority of defendant's stableman to ratify the driver's unauthorized invitation, and the record and supplemental briefs, filed at the request of the appellate court, showed that the question of the stableman's authority had not been submitted to the jury, the omission constituted error, which, though not assigned, might be considered, under court rule 11 (224 Fed. vii, 137 C. C. A. vii).

In Error to the District Court of the United States for the District of New Jersey; Thomas G. Haight, Judge.

Action by Matthew J. McKeon, by Patrick McKeon, his next friend, and Patrick McKeon against the Central Stamping Company. There was a judgment for plaintiffs, and defendant brings error. Reversed, and new venire awarded.

Samuel Kalisch, Jr., and Kalisch & Kalisch, all of Newark, N. J. (Isador Kalisch, of Newark, N. J., on the brief), for plaintiff in error.

John W. Palmer, of Newark, N. J. (Frank Bergen, of Newark, N. J., of counsel), for defendants in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The defendant corporation (plaintiff in error) used in its business a number of wagons for the delivery of wares. Brady, one of the defendant's drivers, asked McKeon, a boy of tender years, to ride with him and help him make deliveries. The wagon was drawn by a pair of horses that had long been known, it is alleged, to have vicious propensities. Brady drove with the boy into the defendant's stableyard, there had conversation with Clarke, the stable foreman, who saw or could have seen the boy on the wagon, and then proceeded on his delivery route. A box having fallen from the wagon, Brady alighted to adjust the tailboard and ordered the boy to get off and get the box. As the boy was descending, the horses jumped and started to run, thereby throwing him under the wheels and causing injuries that made necessary the amputation of his leg.

This action was brought by the next friend of the boy to recover damages for the injuries the boy had sustained and by the father for the loss of the boy's services. The action is based on negligence charged to the defendant for violating a duty of reasonable care, which, it is alleged, the defendant owed the boy. The verdict was for the plaintiffs and the defendant sued out this writ of error.

There was evidence of a custom or practice pursued through many years by the defendant's drivers (in which, it is alleged, the defendant acquiesced for its own profit) of picking up boys to help them make deliveries without payment or reward other than the boyish pleasure of riding. But the case was tried mainly on questions involving, first, the negligence of the driver in inviting an irresponsible boy to ride behind unruly horses and in failing to give him a proper measure of care when the driver alighted from the wagon and left the horses unhitched and unguarded; and, second, the defendant's duty to the boy and its liability to him for the consequences of its driver's negligence, according as the driver's unauthorized invitation was ratified or

acquiesced in by the defendant's stable foreman under authority to bind the defendant.

[1] The jury having found that the boy's injuries were occasioned by Brady's negligence, we are here concerned only with the question of the defendant's liability for its driver's negligence. This question centers on Clarke, the stable foreman, and, we think, on his authority to acquiesce in Brady's invitation to the boy, for manifestly the defendant is not liable to the boy for what happened following Brady's admittedly unauthorized invitation, unless his unauthorized invitation had been ratified or acquiesced in by someone in the defendant corporation having authority to bind it.

In disposing of the defendant's motion for a directed verdict and the plaintiff's prayers for instructions, before charging the jury, the learned trial judge discussed the law. He drew the distinction—very correctly, we think—between cases where employers are charged with a duty of exercising reasonable care toward children invited by their employés without authority upon instrumentalities of recognized danger, such as railroad engines, trains, trolley cars, and where consequently employers are liable for injuries occasioned by negligence of their servants (Danbeck v. N. J. Traction Co., 57 N. J. Law, 463, 31 Atl. 1038; Solomon v. Railway Co., 87 N. J. Law, 284, 92 Atl. 942, Ann. Cas. 1917C, 356; Wilton v. Middlesex Railway Co., 107 Mass. 108, 9 Am. Rep. 11), and cases involving no such duty and consequently no such liability, as where a child rides on a wagon upon the bare unauthorized invitation of a driver (Kiernan v. N. J. Ice Co., 74 N. J. Law, 175, 63 Atl. 998). Following these cases, the learned trial judge declined to give instructions holding the defendant liable on the theory that Brady's act of inviting the boy to ride was alone and of itself a violation of a duty which the defendant owed the boy. He indicated, however, that he would instruct the jury in his charge that they could find the defendant liable if they found that the defendant had ratified Brady's invitation. No question is very seriously raised by the defendant on this writ as to the correctness of this position, nor is any question raised by us as to the grasp which the trial judge had of the issues of the case and of the law properly applicable to them. This is shown by one statement made in disposing of the motion for a directed verdict, which covers the case in a few words. He said:

"I think that, under all of the circumstances, *it is a question for the jury* to say whether or not the unauthorized invitation of the driver *was acquiesced in* (by Clarke) *so as to have become ratified by the company*, and then if it was, whether or not the subsequent action of the driver was negligent as respects this boy so as to make the company liable for the painful injuries which he has received. *If the unauthorized action of the driver was never ratified by the company*, then the boy was a trespasser, or at the very best, a mere licensee, to whom, under the rules of law prevailing in this state, the company owed no other duty than that of refraining from acts wilfully injurious. *If, however, he was there at the express or implied invitation of the company*, the latter owed him the duty of exercising reasonable care."

From this very clear statement of the issues and of the law applicable to them, it is plain that the case as tried turned mainly on the defendant's ratification of Brady's unauthorized invitation. Its ratifi-

cation, if made at all, was made through Clarke, the stable foreman, and, therefore, depended, first, upon the act of Clarke in acquiescing, and second, upon Clarke's acquiescence being within the scope of his authority to speak for the defendant in a way that bound it. What was the scope of Clarke's authority? This was a question of fact, which, in the state of the evidence, could be determined only by the jury. But when the learned trial judge came to charge the jury, he failed—inadvertently, we think—to submit the question, which, in his previous discussion of the law, he had recognized was for the jury. This question, stated broadly, is, whether acquiescence by Clarke in Brady's invitation was within the scope of Clarke's authority, and, whether, accordingly, the defendant had, by Clarke's acquiescence, ratified Brady's unauthorized invitation and had become liable for its consequences.

The judge submitted only the question, whether Clarke did in fact acquiesce. The jury were instructed that the test of this question was what Clarke did or failed to do, and were told that if they found that Clarke did not see the boy on the wagon, then no duty devolved upon the defendant and no liability ensued; but, if, on the contrary, they found that he saw the boy on the wagon and did not make him get off, then there arose in the defendant a duty of reasonable care to the boy, for violation of which by Brady the defendant was liable. We feel that in failing to submit to the jury the question of the scope of Clarke's authority to acquiesce in Brady's unauthorized invitation, the learned trial judge fell into error. This, we think, was a question for the jury. Acquiescence by Clarke in a way that bound his employer depended upon the scope of Clarke's employment. Without first determining the scope of his employment, it is quite impossible to determine his ability to acquiesce in a way that legally bound his employer.

It appears in the testimony that the defendant had instructed Clarke to order boys off the wagons. In imposing this duty upon Clarke, the plaintiff argues, the defendant clothed him with control over wagons and their occupants with full authority to speak and act for it, and therefore it conferred upon him authority to acquiesce in Brady's invitation in a way that made the defendant liable for Brady's negligence. But Clarke's authority to acquiesce and thereby bind the defendant cannot be gathered alone from the defendant's act of imposing upon him a duty to warn boys off wagons; it must be gathered from evidence of Clarke's position in representing the corporation as foreman and as being the corporation at that place, in the sense of being the official or employé through whom the corporation there spoke and acted. But much of the plaintiff's testimony as to Clarke's authority was controverted by testimony for the defendant, by which it intended to show that Clarke was a mere stableman without authority over anything but the teams. In this state of the testimony, we think the scope of Clarke's authority to bind the defendant was a question which the defendant had a right to have submitted and determined by a jury. Because the question was not submitted, and on this ground alone, we direct that the

Judgment below be reversed and a new venire be awarded.

On Petition for Rehearing.

PER CURIAM. [2] By their petition for rehearing, the plaintiffs complain that this court disposed of the writ of error and reversed the judgment in this case on a matter not raised by assignment of error based on any exception in the record. No other error is charged.

It appeared at the argument that the crux of the case was Clarke's authority to ratify the unauthorized act of the defendant's servant and thereby make the defendant liable for his negligence.

Though plainly appearing in the record, this question was not raised by assignment of error, nor was it discussed in the briefs. We therefore asked for supplemental briefs on this one question. The briefs, when filed, as well as the record, when read, disclosed very certainly that this matter had not been submitted to the jury. This omission we thought constituted error, which, though not assigned, we noticed under rule 11 of this court (224 Fed. vii, 137 C. C. A. vii). P. & R. Ry. Co. v. Marland, 239 Fed. 1, 152 C. C. A. 51.

The petition is dismissed.