### PITTSBURGH, S. & N. R. CO. v. LAMPHERE.

(Circuit Court of Appeals, Third Circuit. May 1, 1905.)

No. 24.

1. MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—ACTIONS—EVIDENCE.

In an action for injuries to a brakeman by striking a low trestle, with which he was not familiar, as his train was passing under it, an expert in railroad management was entitled to testify what, in his opinion, good railroading required with respect to the erection of telltales on each side of overhead bridges.

2. SAME—INSTRUCTIONS.

Where, in an action for injuries to a brakeman by striking a low overhead trestle, the issue was whether defendant had been guilty of negligence in not providing a reasonably safe place and safe appliances for plaintiff's use, instructions that it was the duty of the railroad to use due care to provide a reasonably safe place and safe appliances for the use of the workmen, and if it failed so to do, and injury directly resulted therefrom, the railroad company was guilty of negligence; that the servant was entitled to assume that the master had used due diligence in providing suitable appliances, except that where the defect was known to the servant, or so patent as to be readily observed by him, he thereby assumed the hazard; and that, if the servant was not informed by the master of dangers not incident to a careful performance of the work, and which are known to the master, and such servant remains in ignorance and suffers in consequence, the employer is guilty of negligence—were not objectionable as abstract propositions not applicable to the facts.

3. SAME—KNOWLEDGE OF DANGER—ASSUMED RISK.

In an action for injuries to a brakeman by striking a low trestle, evidence as to plaintiff's knowledge or means of knowledge thereof *held* not such as to require a finding that he assumed the risk as a matter of law.

[Ed. Note.—Assumption of risk incident to employment, see note to 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Edward W. Smith, for plaintiff in error.

L. K. Porter, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. The defendant in error and plaintiff below (hereinafter called the plaintiff), a brakeman on the railroad of the plaintiff in error and defendant below, was seriously hurt while in the employment of the defendant company. He had been railroading about 14 years, upon several roads, and was thoroughly trained in the duties of a brakeman. He went into the service of the defendant company in August, 1901. He ran upon other divisions of this company until May 22, 1903, when he was put on a mixed passenger and freight train, as a brakeman, running between Larrabee and Mt. Jewett. Before the date last mentioned, he had never been upon this division. The division is about 26 miles long, and the train made two trips each day between these stations. He ran on this train on May 22d and the two following days. He then had other work until June 15th, when he again acted as brakeman on this mixed train until June 17th, the day on which he was hurt. The usual custom in running this mixed train to Mt. Jewett was that the rear brakeman (which the plaintiff was) should turn a switch, two miles or more from Mt. Jewett, at the end of a switch-back, and ride on the engine down to a switch about one mile from the terminal station at Mt. Jewett, which turned off to the right about 200 feet to a turntable. There it was the duty of the plaintiff to cut the engine off from the train, the freight cars being next the engine, and ride on the pilot down to the turntable, where he helped turn the engine. He rode on the pilot back to the main track, coupled up the engine, and then got on the passenger car at the rear of the train as it passed him, his duty then being to turn such seats as were not occupied, for the return trip, and cut the passenger coach off at some point near the station at Mt. Jewett. From the switch into Mt. Jewett, the main track curves sharply to the left, running through a deep cut, over which, upon a bridge, there was a switch track from the main line of the Buffalo, Rochester & Pittsburgh Railroad Company. The lower stringer or cross-beam of the bridge was 15⅔ feet from the track, and about 3½ feet from the top of a standard freight car. On the day of the accident, for some reason not material in the present case, the train did not stop at the switch, but ran on towards Mt. Jewett. The plaintiff was riding upon the engine, as usual, for the purpose of getting off at the switch. Finding that it was not to stop, he started to go back to the passenger coach in the rear of the freight cars, by climbing over the tender and onto the first freight car, his back being towards the bridge. Just after he had straightened himself up upon the first freight car, he was struck by the bridge and thrown to the ground and received the injuries for which compensation was sought.

The plaintiff testifies that he was not informed or warned by any one connected with the defendant company of the existence of this bridge; that he had not observed it himself, and that from the switch down to the turntable, riding as he did on the pilot and holding on, as it was necessary to do, with his face toward the engine, he had no opportunity of looking in the direction of the bridge while passing over that portion of the switch, about 40 feet, from which it was visible. After he returned from the turntable, he testifies that he had always ridden in the passenger coach, from which the bridge could not be seen, except by a special effort for that purpose.

There was other testimony, giving distances of the switch from the bridge, from the switch to the turntable, and as to points from which the bridge could or could not be seen, which tended to corroborate the testimony of the plaintiff. No telltale or whiplash warnings were placed on either side of the approach to the bridge.

The judgment below was for the plaintiff, and the case is brought here by writ of error. The bills of exception set out all the testimony, together with the charge of the court. There are 10 assignments of error, which may be grouped. The first and second assignments are to the admission, under objection, of the testimony of two witnesses, as follows:

"Mr. Fawcett, what is, if you know, the custom of well-regulated railroads as to placing telltales on each side of low overhead bridges?" Under objection he answered: "The custom is to place telltales on each side of obstructions which are too low to clear a man on a box car—I should say too low to clear a man standing on a box car."

"Q. Mr. Fawcett, is a telltale or whiplash a usual and ordinary appliance in use on well-regulated railroads for the purpose of giving the warning of low overhead bridges, or other obstructions, to employés?" Under objection he answered: "It is; yes, sir."

"Mr. Butler, taking into consideration your experience as a practical railroader, what is, if you know, the custom of well-regulated railroads as to placing telltales on each side of low overhead bridges?" Under objection he answered: "Yes, sir; it is customary."

Counsel for plaintiff in error strenuously objects to the admissibility of this testimony, on the ground that the questions call upon the witness to form an opinion as to what is a well-regulated road before answering; that there is nothing in the question or answer to indicate what is or is not a well-regulated railroad, except the presence or absence of the telltales, or to indicate how many well-regulated railroads there were in the minds of the witnesses at the time they answered, and that neither of these witnesses said that it was the usual or general custom for those railroads to have the telltales. Strangely enough, the court below had sustained an objection to a previous question, "What appliances were customarily put in front of low bridges on railroads on which you worked?" and also ruled out an offer to show, by the witness, that telltales were the usual and ordinary appliances. If the negligence charged against the defendant company be, in its essence, the absence of due and ordinary care to render reasonably safe the places in which and along which its servants are employed, it would

seem that no more appropriate or relevant testimony could be adduced by a plaintiff in such a case as the present, than that which would tend to show what were the ordinary or customary means used by other persons engaged in a like business, to safeguard an admittedly dangerous situation. Undoubtedly it was the right of the plaintiff to show, by testimony, how the approaches to such bridges were usually guarded in the operation of railroads. If the court below had persisted in excluding all such testimony, then the jury would have been left to form its own opinion of what, under all the circumstances, was a reasonably safe place and conditions, in which and under which the railroad's servants should work, and to apply its own standard of what would be the exercise of ordinary care under the circumstances, on the part of a railroad employer, to provide such place or conditions. To deprive the jury of the benefit of such testimony, in cases where the work to be done requires a high degree of technical knowledge and experience, would oftentimes leave employers at the mercy of the variant or, perhaps, capricious judgment of a jury. Of course, to show what was customary in the practice of other railroads in this respect, testimony as to the practice on more than one railroad is necessary, and it is reasonable to require such testimony as to a sufficient number, to establish what might properly be called a custom in the business of railroading. It would, of course, be unreasonable to require testimony as to all railroads, or as to more than would be fairly within the power of parties to produce in the ordinary conduct of a suit. The reasons assigned by the counsel for the defendant company for the objection to showing what was the custom on well-regulated railroads seem to us, in the present case, hypercritical. The question, though technically objectionable in the form stated, did not in the present case involve an answer prejudicial to the defendant. Nor do we see why a witness, who has qualified himself as an expert in railroad management, cannot testify what good railroading in his opinion requires, in the respect under consideration, nor do we think if defendant had shown that upon another railroad no such warning signals were given on the approach to a low bridge, objection could be made to testimony that such railroad was not a well-regulated one, but on the contrary was notoriously badly equipped and managed. At all events, in view of the general charge of the court, and of the points affirmed for both plaintiff and defendant, there was no possible prejudice to the defendant in the admission of the answers to the questions as stated.

The third, fourth and fifth assignments of error are the answers of the court to the first, second, and third points of the plaintiff, which points and answers are as follows:

"1st. I say to you as a matter of law that it is the duty of a railroad company to use due care to provide a reasonably safe place and safe appliances for the use of workmen in its employ. It is obliged to use the same degree of care to provide properly constructed roadbeds, structures and tracks to be used in the operation of the road, and if it fails so to do, and injury directly results to any of its employés by reason thereof, then said railroad company is guilty of negligence."

"Answer. This point correctly states the law as laid down by the Supreme Court of the United States, and it is affirmed."

"2nd. The servant of a railroad company has a right to assume that the master, the railroad company, has used due diligence in providing suitable appliances for the operation of his business. The servant is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This rule is subject to the exception that where a defect is known to the servant, or is so patent as to be readily observed by him, he can not continue to use the defective apparatus in the face of knowledge, and without objection, without assuming the hazard incident to such situation. But the court says to you that if such defect was not known to the servant, or plainly observable to the servant, then the servant does not assume such risk."

"Answer. That point also is drawn from an opinion of the Supreme Court of the United States, and should be affirmed."

"3rd. That if the servants of a master engaged in dangerous occupations are not informed of dangers not incident to the careful performance of the work by the master and which are known to the master, and such servants remain in ignorance of the danger and suffer in consequence, the employer is guilty of negligence."

"Answer. This point is affirmed, with the qualification that where a defect is known to the servant or is so patent as to be observed by him as a prudent and experienced man in such line of work as his, he cannot continue his employment in the face of actual or imputed knowledge and without objection, without assuming the risk as one incident to such employment."

The objection of the counsel for plaintiff in error is that each of these points is an abstract proposition of law; that there is no application in them to the facts in this case, nor does there pretend to be; that such being the case, it was error to submit them to the jury, as the jury naturally assumes that an affirmed proposition has some application to the case on trial, and may make a misapplication of the principle.

These assignments require very little comment. It is not denied that the three propositions quoted correctly state the law. But plaintiff in error is mistaken in his contention that they do not apply to the case in hand. The issue which the jury and the court below had to try was, in the first place, whether the defendant company had been guilty of negligence in not using due care to provide a reasonably safe place and safe appliances for the use of its servants. Surely the top of a freight car is an unsafe place, when passing under this bridge, and while the unsafe situation may be necessary in the operation of the road, and one which is not unlawful for the road to maintain, a workman required to work in such a place is entitled to the exercise of ordinary care by his employer to guard him against its dangers. The absence of warnings of the approach to the bridge, such as the telltales or whiplashes described in the testimony, as customary on other roads, might be evidence to a jury of the want of due care to render the place on the top of a car approaching such bridge a reasonably safe one. It seems to us that the second proposition is also applicable to the facts of the present case, and that the servant of a railroad company, required to ride on the top of a freight car, has a right to expect from the railroad company the use of due diligence in making the passage under the bridge as little dan-

gerous as possible, and the use of the customary means for so doing. We may remark in passing that, even though it were admitted that the employé, riding on top of a freight car, knew of the existence of this bridge and had often passed under it, thus knowing its height and the necessity of stooping to avoid it, still it might be a question for the jury to determine whether the circumstances were such that a moment's forgetfulness would be excusable and argue no contributory negligence on the part of the plaintiff, leaving the railroad company liable for its want of care in not furnishing the telltale warnings, which would have rendered the position on the car one of reasonable safety. Kane v. Northern Cent. Ry., 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339. We think the court, too, were right in considering and affirming the third proposition above stated, and that the same was not an abstract proposition, as respects the facts in this case.

The eighth, ninth and tenth assignments of error are the answers to the fourth, fifth, and eighth points of the plaintiff in error, as follows:

"Fourth. That under the uncontradicted testimony that Lamphere passed under that bridge twenty-two times in broad daylight before the accident, the court must charge as a matter of law that he had an opportunity to learn of this danger, and assumed the risk of it, and the verdict must be for the defendant."

"Answer: Refused."

"Fifth. As under the uncontradicted evidence in this case this bridge or part of it, was in sight to plaintiff in the performance of his duty in the vicinity of the turntable, the court must say, as a matter of law, that he had an opportunity to know of the existence, character and danger of this bridge, and the verdict must be for the defendant."

"Answer: Refused."

"Eighth. That under all the evidence in this case the verdict must be for the defendant."

"Answer: Refused."

The plaintiff denied all knowledge as to the existence of this bridge. Whether he had such knowledge, or not, was a question, of course, for the jury; but the question here raised by the plaintiff in error is that it was the duty of the court, under the facts in the case, to say, as a matter of law, that the plaintiff had opportunity to learn of the danger, and therefore assumed the risk, and that under all the evidence the verdict must be for the plaintiff in error. The duty of the court in such cases depends, of course, upon the testimony. The question of assumption of risk, like the question of contributory negligence, is primarily one for the jury, but the facts may be such, as to either defense, that all reasonable men must draw the same conclusion from them, and that no recovery could be had upon any view which could be properly taken of them. It is well settled that in such cases it is the duty of the court to withdraw the case from the consideration of the jury, by a peremptory instruction to find for the defendant.

Do the facts in the case at bar warrant such a conclusion? We think they do not. It is true, that the testimony shows that altogether in the six days of the plaintiff's work upon this train, he had passed under this bridge 22 times. On each occasion, except

the last one, when he was hurt, he was in the passenger car, where he could not observe the bridge. It is in testimony that the only opportunity he had of seeing this bridge, even at a great distance, was in a space of about 40 feet on the switch leading to the turntable. While passing through this space, the testimony is that he was riding on the step of the pilot, holding on with his hands, and facing the engine. To have had even a distant view of the bridge, while riding in this position, he would have had to turn his head considerably to the right or left,—a thing which he would not naturally do unless he was looking for the bridge, his natural position, and regard perhaps for his own safety, requiring him to look straight before him.

The sixth and seventh assignments were not insisted upon at the argument, and we are clearly of opinion that they present no reversible error.

On the whole, we think the court below properly and fairly submitted the questions of the negligence of the defendant and the assumption of risk by the plaintiff, to the jury, and in its charge was as favorable to the defendant as, under the facts, it could have been.

The judgment below is affirmed.