### BOSTON & M. R. R. v. BROWN.

(Circuit Court of Appeals, First Circuit. December 17, 1914.)

#### No. 1070.

1. MASTER AND SERVANT (§ 113*) — DEATH OF SERVANT — RAILROADS — LOW BRIDGE—TELLTALES.

Where decedent, a railroad brakeman, while sitting on the edge of a freight car, was swept off by a low bridge, and the telltale, erected at a proper distance from the bridge, covered a sweep of not quite 8 feet, while the car on which decedent was sitting was either 9 feet 5⅝ inches or 9 feet 7¾ inches wide, the fact that the telltale was of the standard form mentioned in the regulations of the Massachusetts Railroad Commission did not establish defendant's freedom from negligence; there being nothing to show that the commissioners had ever specially approved the particular telltale, or had fixed the length of the bar and sweep of the ropes at 8 feet.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 213, 224-227; Dec. Dig. § 113.*]

2. MASTER AND SERVANT (§ 219*) — DEATH OF SERVANT — BRAKEMAN — LOW BRIDGE—ASSUMED RISK.

Where decedent, a railroad brakeman, was swept from the top of a car by a low bridge, and there was nothing to show that he had ever passed under it on the top of a freight car, or had his attention directed to the width of the telltale erected before the bridge, he did not assume the risk as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. MASTER AND SERVANT (§ 106*) — DEATH OF SERVANT — RAILROADS — LOW BRIDGE—OWNERSHIP BY CITY.

Where a railroad company operated its line under a low bridge, and decedent, a brakeman, was swept from the top of a freight car, by striking the bridge, and killed, the railroad company was not relieved from liability for negligently operating its road underneath the bridge by the fact that it was maintained by a city, and not by the railroad company.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 193–198; Dec. Dig. § 106.*]

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action by Dana J. Brown, as administrator of the estate of John H. Weymouth, against the Boston & Maine Railroad. Judgment for plaintiff, and defendant brings error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

218 F.—40

Edward K. Woodworth, of Concord, N. H. (Streeter, Demond, Woodworth & Sulloway, of Concord, N. H., on the brief), for plaintiff in error.

Alexander Murchie, of Concord, N. H. (Hollis & Murchie, of Concord, N. H., and Fred H. Brown, of Somersworth, N. H., on the brief), for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge. The defendant in error (hereinafter called plaintiff) has recovered a judgment against the plaintiff in error (hereinafter called defendant) under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]), for conscious suffering and death of his intestate, John H. Weymouth, who, being at the time a brakeman in the defendant's employ, was knocked off the top of a moving freight car, upon which he was sitting, by an overhead bridge, near Lawrence, Mass. The defendant seeks here to reverse the judgment, upon the refusal of the court to direct a verdict in its favor, and upon alleged improper instructions given to the jury.

[1] 1. The defendant had provided a rope telltale bridge guard to warn brakemen on the tops of cars that they were nearing this bridge. There was uncontradicted evidence that regulations prescribed by the Massachusetts Railroad Commissioners, acting under statutory authority, on July 1, 1897, and ever since in force, had approved "the standard form of pendant, or whip cord, and of horizontal bar bridge guards, or telltales, now in common use on the leading railroads of this state"; also that this bridge guard was of the standard form referred to, and was sufficiently far from the bridge to comply with the other provisions of the regulations.

There was evidence that the horizontal bar of this bridge guard, from which its rope pendants hung, was 8 feet long, while the car was either 9 feet 5⅞ inches or 9 feet 7⅜ inches wide. There would thus be left several inches of the car roof on each side over which there could be no rope pendant to give warning. The outside ropes of the telltale were not quite 8 feet apart, not being attached to the bar quite at its extreme ends. And there was evidence that Weymouth was sitting, when he struck the bridge, on one side of the car, facing outward, in a crouched position, with his feet hanging over the edge. Assuming, not only that the bridge guard was of the standard form mentioned in the regulations, but also that the length of the bars used in such bridge guards when the regulations were issued, and ever since, appeared, without contradiction, to have been 8 feet long, there was still no evidence that the commissioners had ever specially approved this particular bridge guard in this particular place; and we are unable to hold that its sufficiency, under all the circumstances shown, was conclusively established merely by the fact that it complied with the regulations, so far as its form was concerned.

Without regard to evidence claimed to indicate that the pole carrying the arm from which this bar hung leaned so as to carry the whole telltale arrangement still further away from that side of the car

whereon Weymouth was sitting when he struck the bridge, there was evidence from which the jury might have found that, since 1897, the average width of freight cars used in making up such trains as passed beneath the bridge had increased, and that a bridge guard not exceeding 8 feet in length would not be enough to secure sufficient warning in the case of cars such as that upon which Weymouth was riding while approaching such a bridge as this, under all the circumstances as they might have been found from the evidence. The commissioners' regulations, and the fact that they were complied with in respect to the form of the bridge guard, if competent for the jury to consider, cannot be regarded as having finally settled in advance what length of bar was sufficient, or what should constitute ordinary care or reasonable prudence on the part of the railroad company, in every case involving the sufficiency of such a guard which might thereafter arise. When they prescribed the form, the commissioners did not prescribe the length of bar, nor can it reasonably be supposed that they intended to do so. These questions were properly for the jury to determine under all the circumstances shown.

[2] This is enough to justify the refusal to direct a verdict for the defendant. The only other ground for asking such a direction was that Weymouth was conclusively shown to have known and appreciated, or to have been bound to know and appreciate, the danger which caused his accident. But, even if the case was one in which he might have been found to have assumed the risk of a danger existing because of the defendant's negligence, the evidence tending to show his experience in railroading, and his opportunities for ascertaining the facts regarding this guard and bridge, did not go far enough to warrant the court in ruling as a matter of law that he had assumed the risk of every danger which the jury might have found involved in passing under them on the top of this car. However often trains upon which he had acted as brakeman had been under the bridge, or however long he had worked as flagman near it, there was nothing to show that he had ever passed under it on the top of a freight car, or had his attention directed to the width of the guard.

[3] 2. Although, according to the evidence, this bridge was unusually low, and maintained, not by the defendant, but by the city of Lawrence, this did not entitle the defendant to the requested instructions that the railroad could not be held negligent with respect to its height. If the passage beneath it was not reasonably safe under all the circumstances, the railroad might still be negligent in continuing to permit the passage of trains beneath it while in such condition.

As to the remaining instructions refused, the assignments of error are either disposed of by what has been said, or the instructions requested were given in substance to the extent that the defendant had the right to require them at all. Two of the requests for instructions related to the question of assumption of risk. We find no error in the instructions given upon this point.

The judgment of the District Court is affirmed, with interest, and the defendant in error recovers his costs on appeal.