## MARLAND v. PHILADELPHIA & R. RY. CO.

(Circuit Court of Appeals, Third Circuit. November 7, 1917.)

### No. 2272.

1. TRIAL ☞194(19)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action against a railroad company for the death of a freight brakeman, whose head it was contended was crushed by an overhanging bridge, it appeared that the train passed under five bridges, and that of these three were of such a height that deceased could not have been struck by their spans. The court then charged that if deceased, who was walking on the top of the train shortly before the accident, could not have reached the place on the train where he was found dead at the time the train reached the fourth bridge, the jury should find that deceased was not hit by such bridge. The court further charged that, having eliminated four of the bridges in case the reasoning was correct, it was a question whether the last bridge, if any, struck deceased, and that the jury should consider whether the fact that his neck was broken was consistent with his having been struck by a bridge. It was further stated by the charge that, unless the jury were able to find that he was struck by a bridge, then there was no evidence of defendant's negligence. Held, that the charge was not objectionable as a binding instruction to find that the brakeman was struck and killed by the last bridge.

2. MASTER AND SERVANT ☞293(21)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS.

In such case, where it appeared that the middle span of the last or fifth bridge was considerably lower than the two side spans, and because of its blackened condition that fact could not be seen until an observer was very close, an instruction that if the brakeman was struck and killed by such bridge, then the question for determination was whether he was warned by the defendant railroad company of his danger, and that the warning did not have to be in writing, or any formal warning by this or that officer, it being sufficient if he was given all the knowledge that the company could give him, properly submitted the question of warning to the jury.

3. MASTER AND SERVANT ☞286(30)—INJURIES TO SERVANT—WARNING.

In such case, though the railroad company had provided telltales to warn of the lowness of the bridge, it could not as a matter of law be de-

clared that such safeguards were in themselves sufficient notice and warning, and the question was properly submitted to the jury.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Catherine Marland, administratrix of the estate of William Edgar Marland, deceased, against the Philadelphia & Reading Railway Company· There was a judgment for plaintiff, and defendant brings error. Affirmed.

Wm. Clarke Mason, of Philadelphia, for plaintiff in error.
George Demming, of Philadelphia, for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. This suit was brought by virtue of the act of Congress of April 22, 1908 (35 Stat. 65, c. 149), as amended by the act of April 5, 1910 (36 Stat. 291, c. 143 [Comp. St. 1916, §§ 8662, 8665]), by Catherine Marland, administratrix of William Marland), against the Philadelphia & Reading Railway Company, to recover damages for the death of said Marland, an employé, alleged to have been caused by said company's negligence. On trial the plaintiff recovered, but on writ of error to this court the judgment was reversed, and the cause was remanded for a new trial. Reference to this court's opinion, reported at 239 Fed. 1, 152 C. C. A. 51, renders a restatement of the facts needless. On retrial, the plaintiff again recovered, and on entry of judgment this writ was sued out by the railroad.

The evidence tended to show the deceased, who was a freight brakeman, was found dead on the coal heap of the engine of the freight train locomotive, and it was alleged his head had been crushed by an overhanging bridge, five of which the train went under. As to three of them, their height was such that the deceased, who was walking on top of the train shortly before the accident, could not reach them. As to one of the other two, the Wissahickon Street bridge, the court, as we read the charge, very fairly submitted to the jury the question of whether the deceased was struck by it. That bridge was low enough to do so, but Marland was so far back on the train from the place where he was found, and there was such shortness of time and difficulty of access to the front of the train, that these factors were called to the jury's attention with the instruction:

"Now, if that train, you find, would have traversed that distance, and therefore did traverse that distance, in less time than it would have taken Marland to have gone from the place on the train where he was seen to the place on the train where his dead body was found, you do not guess at the result, but you know that the Wissahickon bridge did not hit him, or his body would have been found in another place from where it was."

[1] It is complained, moreover, the court virtually charged the jury that Marland was struck by the fifth or remaining bridge, the Stokley Street one. But, while it is quite apparent from the charge that the judge's opinion was that the Wissahickon Street bridge could not have caused, and the Stokley Street bridge did cause, Marland's death, yet there was no such binding instruction given to the jury; but the ques-

tion whether either of the bridges struck him, and, if so, which one, was fairly submitted to it in the following language:

"You have five bridges, and in that way you have eliminated four, and you are down pretty closely to a mathematical proposition, if your reasoning has been correct, as to the bridge which did strike him, if any bridge struck him. Now, that is a question which you have to determine. You are not to guess at it. You are to be convinced of it, under the facts and circumstances and all the evidence in this case, taking them together, using your reason about them in the same way, and reaching a reasoned conclusion and result. Now, you find his position on the train, the position in which his body was found upon the train. Is that consistent with his having been struck by one of these bridges? You find that his neck was broken. Is that consistent with his having been struck by a bridge? You find this mark upon his forehead, under his hatband. It that consistent with it? You take all those facts and circumstances in the case, and you reach the result which your best judgments approve as to that finding. Let me just recapitulate right there, because it is a possible stopping point in your deliberations: If you are able, under this evidence, to reach the conclusion that he met his death by striking the Stokley Street bridge—it really does not matter, as I can see, whether he was struck by the Stokley Street bridge or the Wissahickon bridge; the blow would have been practically the same, and would have had the same result; but, as we have reasoned it out, he either was struck by the Stokley Street bridge or he was not struck by any bridge, and therefore whether he was struck by the Stokley Street bridge in that sense becomes important—if you are unable to find from the evidence that he was, then I charge you, as a matter of law, that there has been no evidence of negligence shown against the defendant in this case and it is entitled to your verdict. Why? Because the only blame attached to them is that they had not warned him against the bridge, and if the bridge did not hit him, then that absence of warning did not cause his death, and there is nothing before you to show that the defendant company in any way was responsible for it."

[2, 3] As stated in the above extract, the only negligence in issue was the railroad's alleged failure to give notice to the deceased of the danger caused by these bridges. There was evidence that these bridges were of a peculiar and unusual construction, as noted in our previous opinion,[1] and the question of whether the deceased knew of it in any way whatever was submitted to the jury in these words:

"If your judgment is that he did meet his death in that way, then you come to the next question, upon which I have already charged you at sufficient

---

[1] "This bridge, as it spanned the tracks, was practically in three parts, or, as a witness said, it 'is really three bridges,' linked together, having three clearances. The side elevation of the bridge—that is, the side visible to one approaching it by train—was 19 feet 10 inches, a clearance carrying dangers inconsiderable, if any. Toward the center of the bridge, at a distance of about 12 feet from its side and running its entire length, the under part abruptly dipped down 2 feet or more, reducing the clearance to 15 feet 10 inches. This central hanging structure extended to within 12 feet of the other side, where it as abruptly ascended an equal distance and made the clearance for the third part of the bridge the same as that of the first. The entire under part of the bridge was blackened by smoke and gases from engines. In approaching the structure from a distance, the under portion of the bridge appeared to be one dark plane, as the central hanging part was in shadow. When within 'about 30 feet, or perhaps two car lengths, of the structure,' by careful looking, this part was discernible. As this central depending structure, dark in itself, was in the shadow of its lateral elevations, there was a question, vigorously controverted, whether its dangers, manifestly considerable, were obvious, and therefore whether they were risks assumed by the intestate as incidents to his employment."

length, and that is, was he warned by the defendant company of that danger, so that he might look out and take care of himself? And when I say warned, I mean warned so as to get that idea into his head fairly and squarely; and it also means this, as I told you before: It did not have to be any warning in writing, or any formal warning by this officer or that officer or the other officer, but we get right down to the common sense of it. Did he have all the knowledge which the railroad company could have given him? Because, if he had it, as your common sense will tell you, it would be a futile thing to require the company to tell him something which he already knew. But if, under all the facts and circumstances in this case, you reach the judgment and conclusion that he did not have that fact in his mind, then I charge you, as a matter of law, that it was the duty of the defendant company to have put it into his mind, and there is evidence from which you can find the negligence of the defendant in this case, and make your finding in favor of the plaintiff."

This question of notice, we think, was one especially for the jury. The bridge was, as we have said, of so peculiar and unique a character as to create latent and unlooked-for dangers to trainmen. It is true the railroad had provided telltales; but for the court to have instructed the jury that these recognized standard safeguards in and of themselves were a complete fulfillment of the duty of notice would have been error. The questions of notice given by the defendant and of knowledge acquired in any way by the deceased of such dangers was submitted to the consideration of the jury, as we have said, in proper terms. When the real atmosphere of the trial is sensed, the case was tried and determined upon the two questions of fact: First, whether the deceased was struck by an overhanging bridge which had a latent and unusual danger; and, second, was the deceased carried under such bridge without notice or knowledge of its latent dangers?

Without entering upon a discussion of the several assignments of error seriatim, we may say that we have duly considered them all, and in substance dispose of them in what we have said above.

Finding, therefore, no error in the trial below, the judgment is affirmed.