## CRANE v. PAYNE, Agent.

(Circuit Court of Appeals, Eighth Circuit. June 7, 1923.)

### No. 5740.

1. **Master and servant ⊚⇒265(2)—Incumbent on plaintiff to establish negligence alleged.**

    Where, in action for death of railway switchman, pleadings charge negligence in not maintaining telltales or some other appliance to warn switchman of train's approach to low bridge, it was incumbent on her to establish such negligence, and, if failure to maintain such appliance was not negligence, she could not recover.

2. **Evidence ⊚⇒474(7)—Testimony that telltales in railroad yard would tend to confuse held admissible.**

    Where negligence was charged in not maintaining telltales or other appliances in railway yard to warn switchman of train's approach to low bridge, witness accustomed to operation of trains in such yards was properly permitted to testify that such telltales would tend to confuse operation and prove more dangerous in operation than as the yards were constructed and maintained.

3. **Master and servant ⊚⇒289(1)—Contributory negligence question of fact.**

    Whether railway switchman was guilty of such contributory negligence as would bar recovery for his death is a question of fact.

4. **Negligence ⊚⇒136(5)—Verdict may be directed, when contrary verdict would be set aside.**

    If, under all the evidence, contributory negligence is so clearly established that verdict for plaintiff, if returned, would in exercise of sound judicial discretion be set aside, the court is warranted in directing verdict for defendant.

5. **Master and servant ⊚⇒286(15), 289(22)—Railroad's negligence in not maintaining telltales and switchman's contributory negligence held for jury.**

    Whether railway company was negligent in not maintaining telltales in railway yard to warn switchman of train's approach to low bridge, and whether the switchman was guilty of contributory negligence, in view of his experience and knowledge of the situation, *held* questions for the jury.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by Leona Crane, administratrix of Henry C. Crane, deceased, against John Barton Payne, designated Agent in accordance with provisions of Act Feb. 28, 1920 (41 Stat. 456), terminating federal con-

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

trol of railroads. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

W. H. Douglass, of St. Louis, Mo., for plaintiff in error.

W. M. Hezel, of St. Louis, Mo. (J. L. Howell, of St. Louis, Mo., on the brief), for defendant in error.

Before SANBORN and KENYON, Circuit Judges, and POL-LOCK, District Judge.

POLLOCK, District Judge. This is an action to recover damages for death by wrongful act, brought by the widow of the deceased. At the trial the court on all the evidence directed a verdict for defendant therein. Plaintiff brings error.

But two grounds of error are relied upon; i. e.: (1) In the admission of evidence offered by defendant at the trial; (2) the action of the trial court in directing a verdict for defendant. To understand the controversy, the material facts may be briefly summarized, as follows:

Deceased, Henry C. Crane, on the 6th day of November, 1918, was in the employ of the Director General of Railroads, then in possession of and operating the St. Louis Merchants' Bridge Terminal Railway Company in the city of St. Louis. At the time of his death deceased was working as a switchman in a crew of five men, to wit, an engineer, fireman, and switch foreman, and two switchmen, who were moving a train of about 45 cars from the yards of the Terminal Company for delivery to the Missouri Pacific and Wabash Railways. The cars which were to go to the Missouri Pacific were located on the rear end of the train, and were to be delivered either east of Fourteenth street or east of Twenty-Third street in the city. However, at which place the delivery was to be made was not known to those in charge of the movement until the train would reach Union Station territory. As the train was being moved, it passed over elevated tracks and down an incline until it reached the level of the Union Station yards. Steel bridges span the tracks and inclines at Twelfth, Fourteenth, Eighteenth and Twenty-First streets in the city. When the tracks were on inclines under these bridges, the cars would not clear a man standing on top of the car. The deceased was head brakeman on the moving train; that is, the brakeman nearest the engine when the train reached Twelfth street. He was seen just prior to this time standing on top of a car near the engine looking to the east. Before the train had reached the cross-over west of Fourteenth street, and while it was proceeding slowly westward, the foreman got down from the train, went to a telephone station and inquired where the delivery of the cars was to be made, and learned it was to be made at the yards west of Twenty-Third street. He then caught up with the moving train and signaled to proceed westward. Whether this signal was seen by the deceased, standing on top of the train, is not disclosed by the evidence. Deceased was again seen standing on the top of a car some distance from the engine with his back toward the west. There was evidence of a witness that he tried to warn deceased of the danger of his position, but probably without avail. In any event, passing under

the bridge at Twenty-Third street, which was too low to clear a man standing on the top of a car, he was struck, knocked off the car, and killed.

The gravamen of plaintiff's complaint is that it was negligence for the company to operate the train under the Twenty-Third street bridge, which was so low as not to clear a man standing on the top of a car, with the car descending an incline, without placing telltales to warn one so situated they were approaching a low bridge, that would not clear in standing on the top of a car as was deceased. The switches in the yard where deceased was killed all operate by semaphores moved from towers, and it is the insistence of defendant the use of telltales in a yard such as the one in question would in practical operation of the traffic obstruct the view, and by the manner in which said telltales would have to be constructed would render the operation of trains therein far more dangerous than as the yard is now constructed.

Deceased for many years was in the employ of the Chicago, Burlington & Quincy Railway, and for a period of about 8 years while in such employ was a conductor on a passenger train running in and out of the Union Station under the bridge in question, and therefore it is contended must have known its height was not sufficient to allow him to clear the bridge standing as he was on the top of a freight car. As the deceased reported for work at about 3 o'clock in the afternoon the day on which he was struck and killed, and as the train moved shortly thereafter, the accident must have happened in the afternoon, in daylight, something about 4 p. m.

[1] Under the pleadings, it was incumbent upon plaintiff, to entitle her to a recovery, to establish the negligence relied upon in the petition; that is, the failure of the Terminal Company to have erected and maintained on the east side of Twenty-First street bridge over the yards telltales or some other appliance to warn the deceased the bridge being approached was low and would not clear one standing on the top of a freight car being moved as the train in question. If the failure, to so establish and maintain telltales, or other like warning to deceased, under the circumstances, was not negligence, then the plaintiff could not recover in the action.

[2] The first ground of error relied upon to work a reversal of the judgment rendered is that the court permitted a witness who was accustomed to operating trains under the bridges in these yards to testify in such yards telltales would tend to confuse the operation and prove more dangerous in actual operation than as the yards are constructed and maintained; in other words, that the use of such appliances as it was insisted by the plaintiff should have been used was impractical in operation. As it was incumbent upon the plaintiff to establish negligence in this case on the part of the Terminal Company, or the Director General of Railroads operating the property of said company, in not providing such telltales or other system of warning, and as this evidence was by a witness accustomed to the operation of like trains in the yards in question, we see no error therein.

[3, 4] However, the question remains as to the action of the trial court in directing a verdict for defendant. Was the alleged contributory negligence on the part of deceased so clearly proven by the evi-

dence as to warrant this action on the part of the trial court? While it is true, had the case been submitted to the jury under a proper charge from the court, and the jury by its verdict had found the deceased guilty of such contributory negligence as would bar a recovery, such verdict would find ample support in the evidence found in this record, yet such is not the test to which this case must be submitted. The jury and not the court was the trier of the facts, and the question whether the deceased was guilty of such contributory negligence as would bar a recovery is a question of fact. Now, if, under all the evidence, this question of fact was so clearly established that, had a verdict for the plaintiff been returned, the court, in the exercise of a sound judicial discretion, must have set the same aside, in such case, the court would be warranted in directing a verdict, for the reason the law does not require the doing of a useless thing, and such is the settled rule in the federal courts of this country. See Kanawha Railway Co. v. Kerse, 239 U. S. loc. cit. 581, 36 Sup. Ct. 174, 60 L. Ed. 448; Hackfeld v. U. S., 197 U. S. loc. cit. 447, 25 Sup. Ct. 456, 49 L. Ed. 826; Warner v. Railroad Co., 168 U. S. loc. cit. 348, 18 Sup. Ct. 68, 42 L. Ed. 491.

[5] Whether from past experience and knowledge of the situation had by deceased, and the danger confronting him from the manner of the construction of the street bridge over and across the track on which the train was at the time proceeding when deceased was struck and injured, and whether the employer was negligent in the fulfillment of its duty to exercise reasonable care to furnish a reasonably safe place in which deceased should work, were, of course, questions of fact ordinarily for the jury. The test of the duty of the employee to take heed for his own safety in cases of this character is quite clearly and positively stated by Mr. Justice Pitney in Ches. & Ohio Ry. v. De Atley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016, as follows:

"It is insisted that the true test is, not whether the employee did, in fact, know the speed of the train and appreciate the danger, but whether he ought to have known and comprehended; whether, in effect, he ought to have anticipated and taken precautions to discover the danger. This is inconsistent with the rule repeatedly laid down and uniformly adhered to by this court. According to our decisions, the settled rule is, not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer, or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them. Gila Valley Ry. Co. v. Hall and Seaboard Air Line v. Horton, ubi supra."

Applying this test as the true rule, we are of the opinion it was a question of fact for the jury on this record to determine, first, whether, under all the facts and circumstances of this case, the employer was shown to have been negligent in failing to exercise reasonable care to furnish a reasonably safe place in which deceased was called upon to work; second, whether under all the facts and circumstances of this case, and applying the rule above stated, deceased was guilty of such contributory negligence as would bar a recovery.

On this ground the judgment below is accordingly reversed, and the case remanded, with directions to grant a new trial in the action.