## DAVIS, Designated Agent, v. CRANE.

(Circuit Court of Appeals, Eighth Circuit. April 19, 1926.)

No. 7181.

**1. Appeal and error ⬤⟿1099(3)—Former decision of Court of Appeals on question of railroad's negligence and contributory negligence of deceased switchman is law of case on subsequent hearing; evidence being substantially the same.**

Decision of Court of Appeals on former appeal that question of negligence of. railroad and contributory negligence of deceased switchman were for jury is law of the case on subsequent hearing; evidence being substantially the same on both trials.

**2. Master and servant ⬤⟿204(1)—Assumption of risk is defense, where no statute for employés' safety is involved (federal Employers' Liability Act [Comp. St. §§ 8657–8665).**

Although under federal Employers' Liability Act (Comp. St. §§ 8657–8665) contributory negligence is not a defense, damages only being reduced in proportion, assumption of risk by employé, if established, is defense where no statute intended for safety of employés is involved.

**3. Master and servant ⬤⟿265(13).**

Assumption of risk by employé is affirmative defense, and burden of proof to establish it is on employer.

**4. Master and servant ⬤⟿101, 102(1).**

Employer has duty to use due care in providing employé reasonably safe place to work.

**5. Master and servant ⬤⟿226(2)—Employé does not assume extraordinary risks due to employer's negligence unless aware of danger.**

Employé assumes ordinary risk incident to business, but does not assume extraordinary risks arising from employer's negligence until after becoming aware of danger therefrom, or unless they are so plainly observable that he is presumed to appreciate danger.

**6. Master and servant ⬤⟿217(5)—Switchman's knowledge of clearance of overhead bridge will not be presumed because he had passed under bridge inside of passenger coaches.**

Knowledge of deceased switchman that overhead railroad bridge would not clear man riding on top of cars cannot be presumed, by virtue of fact that he passed under bridge inside of passenger coaches while performing duty as conductor.

**7. Master and servant ⬤⟿100(1)—Device of railroad to create exemption from liability for injuries to employé by obstructions mentioned in application signed held void (federal Employers' Liability Act, § 5 [Comp. St. § 8661]).**

If application signed by railroad switchman, furnished by railroad, relative to exercising care in passing under bridges, was device on part of railroad to create exemption from liability under federal Employers' Liability Act (Comp. St. §§ 8657–8665), is void under section 5 thereof.

**8. Master and servant ⬤⟿100(1)—Carrier cannot abrogate duty to use due care in furnishing safe working place, by notice that it intends to continue negligence.**

Common carrier cannot abrogate its duty to use due care in furnishing safe place for its employés to work by mere notice that it intends to continue its negligence.

**9. Master and servant ⬤⟿288(5)—Evidence held not to show as matter of law that switchman assumed risk because of knowledge bridge was too low (federal Employers' Liability Act [Comp. St. §§ 8657–8665]).**

In action for death, under federal Employers' Liability Act (Comp. St. §§ 8657–8665) evidence *held* not to show as matter of law that switchman had actual knowledge that bridge was too low to permit man riding on freight car to pass under so as to come within doctrine of assumption of risk.

**10. Master and servant ⬤⟿288(12)—Brakeman's assumption of risk from overhead bridge held for jury on evidence as to obvious danger (federal Employers' Liability Act [Comp. St. §§ 8657–8665]).**

In action under federal Employers' Liability Act (Comp. St. §§ 8657–8665), for death of brakeman on freight train, evidence as to whether danger from overhead bridge, too low to permit passage of man riding. on top of freight car, was so obvious that deceased should have known it, *held* for jury on question of assumption of risk.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by Leona Crane, administratrix of the estate of Henry C. Crane, deceased, against James C. Davis, Designated Agent. Judgment for plaintiff, and defendant brings error. Affirmed.

R. E. Blodgett, of St. Louis, Mo. (J. L. Howell, of St. Louis, Mo., on the brief), for plaintiff in error.

W. H. Douglass, of St. Louis, Mo., for defendant in error.

Before STONE, KENYON, and BOOTH, Circuit Judges.

KENYON, Circuit Judge. [1] This is the second appearance here of this case. It is an action brought by defendant in error (hereafter designated as plaintiff) against the Director General of Railroads while in charge of and operating the railroads of the St. Louis Merchants' Bridge Terminal Railway Company and Terminal Railroad Association of St. Louis (designated hereafter as defendant), claiming damages under the federal Employers' Liability Act on account of the death of plaintiff's husband (hereafter called decedent), alleged to have been caused

by negligence of defendant while decedent was employed as a switchman by the St. Louis Merchants' Bridge Terminal Railway Company. The facts are quite fully set forth in the former opinion of this court (Crane v. Payne, 291 F. 551); hence need not be repeated in extenso here. It may be said, however, that decedent was killed in the daytime while he was acting as a brakeman in the line of his duty on the top of a freight car of a moving train in the terminal yards at St. Louis. The train, consisting of 45 cars, and engaged in interstate commerce, was proceeding under the viaduct or overhead bridge at Twenty-First street, which bridge would not clear a man on top of the cars. Decedent came in contact therewith, was knocked from the car, and killed. On the former trial of the case in the District Court a verdict was instructed for the defendant. Upon appeal to this court, that decision was reversed, this court holding that the question of negligence on the part of defendant, viz. the failure to have telltales to warn one approaching this bridge of the danger from want of clearance, and likewise the question of contributory negligence on the part of decedent, were questions of fact for the jury. The opinion did not refer to the defense of assumption of risk. The former decision holding that the questions of negligence of defendant and contributory negligence of decedent were for the jury is the law of the case on this hearing; the evidence being substantially the same upon both trials. Balch et al. v. Haas, 73 F. 974, 20 C. C. A. 151; Town of Fletcher v. Hickman, 208 F. 118, 125 C. C. A. 346; Meyer & Chapman State Bank v. First Nat. Bank of Cody (C. C. A.) 291 F. 42. These two questions therefore we lay aside. In the present case the jury returned a verdict for $25,000 in favor of the widow and children.

The pleadings in the former case were the same as here, and the defense of assumption of risk was pleaded by defendant and argued in the briefs of both parties. While not referred to in the opinion of the court, yet the question of decedent's knowledge and appreciation of the danger was evidently before and in the mind of the court, as the test set forth in the opinion from Chesapeake & Ohio Railway Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016, as the governing rule to be applied to the facts is as applicable to the defense of assumption of risk now relied on as it is to the claim of contributory negligence. However, as both parties have presented the case on the theory that this court did not in its former opinion pass on the question of assumption of risk, we accept the situation so presented.

[2] The issue here is narrowed to one question, viz.: Should the trial court have held as a matter of law that decedent assumed the risk arising from the negligence of defendant in failing to provide warning as to the want of clearance of the Twenty-First street bridge? The jury must have found negligence on defendant's part in failing to maintain telltales; that being the only question as to defendant's negligence submitted to it. This action is brought under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), which provides for the recovery of damages to be paid for the benefit of the surviving widow or husband and children in case of the death of an employé engaged in interstate commerce, where such death results from the negligence of the officers, agents, or employés of the carrier by reason of any defect or insufficiency due to its negligence in its appliances, track, roadbed, works, etc. While under that act contributory negligence is not a defense, but damages are to be reduced in proportion to the negligence, such assumption of risk as is here insisted upon, no statute intended for the safety of employés being involved, is, if established, a defense. Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Seaboard Air Line Ry. v. Horton, 239 U. S. 595, 36 S. Ct. 180, 60 L. Ed. 458; Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970; Pryor v. Williams, 254 U. S. 43, 41 S. Ct. 36, 65 L. Ed. 120.

[3-5] We are therefore called upon to deal entirely with the doctrine of assumption of risk, which is an affirmative defense; the burden of proof to establish it being upon defendant. Kanawha Ry. v. Kerse, 239 U. S. 576, 36 S. Ct. 174, 60 L. Ed. 448. The law applicable thereto is well settled, although difficulties frequently arise in applying the same to the facts. It is the duty of the employer to use due care in providing the employé a reasonably safe place to work. An employé assumes the ordinary risks incident to the business in which he engages, but does not assume extraordinary risks arising from the employer's negligence unless and until he is aware of the same and appreciates the danger therefrom, or unless, under the circumstances, they are so plainly observable that he is presumed to know them and to appreciate the danger.

In Gila Valley, Globe & Northern Ry. Co. v. Hall, 232 U. S. 94, 101–102, 34 S. Ct. 229,

231 (58 L. Ed. 521), the Supreme Court said: "An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employé has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employé with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear, not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it."

This court said, in United States Smelting Co. v. Parry, 166 F. 407, 409, 410, 92 C. C. A. 159, 161: "It is the duty of a master to exercise reasonable care to provide a reasonably safe working place for his servant, and the latter is entitled to act upon the assumption that that duty has been performed, unless the contrary be known to him, or be so patent as to be readily observed by him. He is not required to make an investigation or inspection to ascertain whether or not that duty has been performed, but only to have due regard for what he actually knows and for what is so patent as to be readily observed by him, by the reasonable use of his senses, having in view his age, intelligence, and experience." See, also (this circuit) Chicago, M. & St. P. Ry. Co. v. Donovan, 160 F. 826, 87 C. C. A. 600; Chicago, B. & Q. R. Co. v. Shalstrom, 195 F. 725, 115 C. C. A. 515, 45 L. R. A. (N. S.) 387; Republic Elevator Co. v. Lund, 196 F. 745, 116 C. C. A. 373, 45 L. R. A. (N. S.) 707; Kaemmerling v. Athletic Mining & Smelting Co. (C. C. A.) 2 F.(2d) 574; Atchison, T. & S. F. Ry. Co. v. Wyer (C. C. A.) 8 F.(2d) 30.

One of the most concise statements on the subject is that in Director General of Railroads v. Templin (Third Circuit) 268 F. 483, 485: "It is recognized that under the federal Employers' Liability Act an employé assumes the risks normally and necessarily incident to his employment, and also the extraordinary risks, or risks caused by his master's negligence; yet he assumes the latter only when they are obvious or fully known by him and are such as would under the circumstances be seen and appreciated by an ordinarily prudent person." See, also, Chicago & E. R. Co. v. Ponn, 191 F. 682, 112 C. C. A. 228; Cincinnati, N. O. & T. P. Ry. Co. v. Thompson, 236 F. 1, 149 C. C. A. 211; Philadelphia & R. Ry. Co. v. Marland, 239 F. 1, 152 C. C. A. 51; Taber v. Davis (C. C. A.) 280 F. 612; Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 18 S. Ct. 777, 42 L. Ed. 1188; Choctaw, Oklahoma & Gulf R. Co. v. McDade, 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96; Schlemmer v. Buffalo R. & P. R. Co., 220 U. S. 590, 31 S. Ct. 561, 55 L. Ed. 596; Seaboard Air Line v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Ches. & Ohio Ry. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016; Ches. & Ohio Ry. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 60 L. Ed. 1102; Boldt v. Pa. R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385.

Applying the test of the well-established doctrines announced in these cases to the present controversy, does the evidence show that decedent knew the Twenty-First street bridge had a low clearance, and that there were no telltales to warn a person on top of cars about to pass thereunder of the danger, or that the danger from low clearance and lack of telltales was so plainly obvious that under the circumstances as a reasonably prudent person he should have known and appreciated it?

[6] Decedent was a member of the train crew employed on the St. Louis Merchants' Bridge Terminal Railway Company in the city of St Louis. At the time of his injury and death, the train upon which he was engaged was moving in the yards of the Terminal Railroad Association of St. Louis with cars for delivery to the Missouri Pacific and Wabash Railways, having come over the Merchants' Bridge Terminal Railway in the usual course of transportation from the north and east into the city of St. Louis. The train came down an incline from the elevated tracks, passing under the viaduct at Twelfth street, which is located about where the tracks reach the Union Station territory. In proceeding to its destination, this train would pass under the Fourteenth, Eighteenth, and Twenty-First street overhead bridges in the general terminal yards at St. Louis. The train crew with which decedent was associated, the evidence shows, had been in these yards a number of times, but no witness testifies that decedent was ever present at these times. In fact, the visits of the crew to these yards appear to have been only oc-

casional. Their work was on the line of the Bridge Terminal Railway Company. Decedent, when a passenger conductor on the C., B. & Q. Ry., had passed under this bridge inside of the cars for a number of years. He probably knew the bridge was there, but the record does not show that he knew anything about the clearance or want of "telltales." Knowledge of the situation upon his part of the dangers involved cannot be presumed by virtue of the fact that he passed under the bridge inside of passenger coaches while performing his duty as a conductor.

Boston & M. R. R. v. Brown, 218 F. 625, 627, 134 C. C. A. 383, is a case where a railroad brakeman sitting on the edge of a freight car was swept off by a low bridge. There was evidence that he had formerly passed under the bridge, but the court pointed out that, however often trains upon which he had acted as brakeman had been under the bridge, or however long he had worked near it, the evidence did not show "that he had ever passed under it on the top of a freight car, or had his attention directed to the width of the guard."

In West v. Chicago, B. & Q. Ry. Co., 179 F. 801, 103 C. C. A. 293, a brakeman on top of a freight car was killed in the night by his head striking an overhead bridge. It was claimed that he had passed under the bridge and was familiar with it. It did not appear how often he had done so in the daytime. The court said there was no evidence that when he had passed under the bridge he was in a position where he could see it, and that, if it could be inferred that he might have noticed the bridge, "that would be far from establishing that he had ever apprehended the danger arising from its presence." That would seem to be very much in point here. Likewise Pittsburgh, S. & N. R. Co. v. Lamphere, 137 F. 20, 69 C. C. A. 542; also Butler v. Frazee, 211 U. S. 459, 466, 29 S. Ct. 136, 138 (53 L. Ed. 281) where the court said: "Where the elements and combination out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that the employé must be held, as matter of law, to understand, appreciate and assume the risk of it."

There is an utter lack of evidence that decedent knew of the want of sufficient clearance of the Twenty-First street viaduct or knew anything at all concerning the lack of telltales, unless as claimed by defendant the statements in his application for employment are sufficient to have given him notice.

Prior to his employment, decedent signed a certain application (in evidence) furnished him by the defendant, which in part is as follows:

"I understand that there are a great many bridges, buildings, signals, and other obstructions which will not clear a man riding on the top or side of car, for which yardmen and others whose duties require them to ride on trains must be on the constant lookout, and hereby agree to exercise all possible care and caution to avoid such obstructions. I also understand and agree that, when it is necessary for me to go into the yards of other companies, I must exercise the same care in looking out for obstructions which may be close to track.

"It is especially understood by me that the south end of the Twelfth street bridge, immediately over Merchants' Terminal-Missouri Pacific connection on Austin street, St. Louis, will not clear a man in any position on top of a covered car or rack car."

[7, 8] If this application was a device on the part of defendant to create exemption from the liability established by the federal Employers' Liability Act, it is void under section 5, c. 149, thereof (Comp. Stat. § 8661). If it is to be considered a notice of anything, it bears on the question of contributory negligence. It is not sufficient to show assumption of risk as to all bridges, buildings, and other obstructions that might be dangerous. A common carrier cannot abrogate its duty to use due care in furnishing a reasonably safe place for its employés to work by a mere notice that it intends to continue its negligence. If this could be done, such duty would be destroyed.

In West v. Chicago, B. & Q. Ry. Co., 179 F. 801, 804, 103 C. C. A. 293, 296, it was claimed that West must be held to have had knowledge of the low bridge, contact with which resulted in his death, because of a notice on the time-tables which the employés were compelled to have, which stated that: "Overhead bridges will not clear a man standing on top of high cars. Employés must look out for and guard themselves accordingly." The court held that, if this was an attempt on the part of the company to abandon its duty and to destroy the employé's right to rely upon the belief that the duty had been performed, it was void as against public policy. It also held that, "as an attempted notice of the particular danger at this particular place, the rule manifestly falls short."

[9] There is nothing whatever in the application giving any specific notice as to the

Twenty-First street bridge. It refers to the south end of the Twelfth street bridge, and certainly, if considered as a notice, it fails to be such as to the Twenty-First street bridge. Why could not an employé have assumed, had he known there was a bridge at Twenty-First street, that, inasmuch as it had been specially pointed out that the Twelfth street bridge was dangerous and the Twenty-First street bridge was not mentioned, there was no danger there. The notice without the reference to the Twelfth street bridge would have been a much more effective one than with it. Surely the employé was not compelled because of this alleged notice to make a survey of all the bridges he might be required to pass under in his work to see if the clearance was sufficient or be held to have assumed any risk arising therefrom. Certainly a court could not as a matter of law say that decedent had actual notice and knowledge of the dangers of the Twenty-First street viaduct to one upon top of the cars, in the absence of warning telltales.

Was the risk so obvious and plainly observable that decedent must be presumed under all the circumstances to have known it? Decedent at the time was engaged in carrying on his work as a switchman. A rule of the defendant in evidence provides:

"When operating through interlocking territory, excepting the tunnel, and when passing through yards, all members of freight train crews must maintain positions on top of cars to transmit signals and be of proper assistance when accidents or other emergencies arise."

This territory where the accident occurred was interlocking territory. There is no dispute in the evidence that it was decedent's duty to be on top of a car near the head of the train to pass on to the engineer signals given from the rear of the train. This required looking to the rear. He was engaged in that duty immediately prior to the accident, as is shown by the evidence of Wood and Wright. The foreman of the crew, Wright, had gotten off the train at Fourteenth street to get instructions at the place there provided for that purpose. After receiving them, he got on the rear of the train, it having continued to move slowly, and gave a signal to decedent which meant to proceed, and which decedent was to communicate to the engineer. The witnesses state they could see a man or an object on top of the train at the place where they supposed decedent to be, but they could not tell whether he received or acknowledged the signal. Decedent on top of the cars had come safely under the Twelfth street bridge, concerning which he had notice that it would not clear a man. As to the Fourteenth street bridge, there was evidence in the former case that it was down at that time, but such evidence does not appear in this record. That bridge would not clear a man. How decedent managed to come under it would be a mere matter of surmise. The Eighteenth street bridge would clear him. Up to that time the necessity of watching for signals from Wright might not have been so necessary as thereafter. It was approximately 1200 feet from the Eighteenth street bridge to the Twenty-First street bridge.

[10] We are asked to say as a matter of law that under these circumstances, where the brakeman in the line of his duty was on top of a car near the engine of a long, moving train, watching for signals from the rear, with his mind necessarily concentrated on that duty, with his back to the bridge the train was approaching, the danger therefrom by reason of insufficient clearance and absence of telltale warnings was so obvious that he must be held to have assumed the risk. We cannot so hold. It is a matter of very grave dispute as to whether or not the risk was so obvious that decedent should have known and appreciated it. Had the jury so found under the evidence, we think a court would not have been warranted in disturbing such finding. It seems to us peculiarly a question of fact for a jury.

Defendant places stress upon Southern Pacific Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335, a mail crane case, where it was held that an experienced locomotive engineer, who had been for some time operating over a railroad where mail cranes were set close to the track, must be presumed to have known the danger of being struck by their projecting arms when leaning from his cab window in the discharge of his duty, and as a matter of law assumed the risk. There is a strong dissenting opinion by three of the justices. As pointed out in McAdoo v. Anzellotti (C. C. A.) 271 F. 268, 270, this case is an "extreme example of imputed knowledge on the part of the workman." In any event the doctrine of that case is limited by the court to mail cranes, and reference is made to conditions peculiar thereto, viz. that the cranes along the railroad were of uniform distance from the track and constructed in a particular way under orders of the Post Office Department for the business of

the United States, and their location and danger were fully known to the engineer.

In the case of Central of Georgia Ry. Co. v. Davis, 7 F.(2d) 269, the Circuit Court of Appeals of the Fifth Circuit held that an employé had not assumed a risk where the company had permitted a mail crane about four feet high and but three or four inches from the outside of a passing coach, to be unnecessarily near the track, and held that, where a flagman leaning from a passenger coach was struck by such mail crane it was a question of fact for the jury whether he knew of the location thereof and the danger therefrom. The court distinguishes the case from Southern Pacific Co. v. Berkshire, supra, and, of course, the present case is likewise readily distinguishable. In the following cases, bearing some similarity to this one, the question of assumption of risk was held to be for the jury: Choctaw, Oklahoma & Gulf R. Co. v. McDade, 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96; Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 25 S. Ct. 164, 49 L. Ed. 382; New York, N. H. & H. R. Co. v. Vizvari, 210 F. 118, 126 C. C. A. 632, L. R. A. 1915C, 9; Portland Terminal Co. v. Jarvis, 227 F. 8, 141 C. C. A. 562; Marland v. Philadelphia & R. Ry. Co., 246 F. 91, 158 C. C. A. 317; Philadelphia & R. Ry. Co. v. Marland, 239 F. 1, 152 C. C. A. 51; Taber v. Davis (C. C. A.) 280 F. 612; Erie R. Co. v. Regan (C. C. A.) 297 F. 435; Smith v. Payne (C. C. A.) 269 F. 1; Pittsburgh, S. & N. R. Co. v. Lamphere, 137 F. 20, 69 C. C. A. 542; Waldron v. Director General of Railroads (C. C. A.) 266 F. 196; Davis v. Scroggins (C. C. A.) 284 F. 760; Boston & M. R. R. v. Brown, 218 F. 625, 134 C. C. A. 383; Narramore v. Cleveland, C. C. & St. L. Ry. Co., 96 F. 298, 37 C. C. A. 499, 48 L. R. A. 68.

We have carefully examined and considered the facts in this record, and we have no difficulty in arriving at the conclusion that the question of assumption of risk was one of fact for the jury and not of law for the court, and that there was no error in denying the motion of defendant at the close of the evidence for an instructed verdict in its favor.

Andrew W. Mellon having been appointed as the Designated Agent, in accordance with the provisions of the Act approved February 28, 1920, terminating federal control of railroads, in place of James C. Davis, he is substituted as plaintiff in error.

The judgment of the trial court is affirmed.